IN RE the MARRIAGE OF:

David W. BATCHELOR, Petitioner-Appellant,

v.

Therese A. BATCHELOR, Respondent-Respondent.

Court of Appeals

*No. 96–3186. Submitted on briefs July 22, 1997.—Decided September 3, 1997.*

(Also reported in 570 N.W.2d 568.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Christine Tomas* of *Braden & Olson* of Lake Geneva.

On behalf of the respondent-respondent, the cause was submitted on the brief of *John R. Dade* of *Dade & Brellenthin* of Whitewater.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

SNYDER, P.J. David W. Batchelor appeals from an order disqualifying his counsel in divorce and domestic abuse proceedings. He contends that the motion of his wife, Therese A. Batchelor, to disqualify his counsel due to a conflict of interest was untimely and subject to waiver. In addition, David argues that Therese failed to meet her burden of proof requiring disqualification and that the trial court failed to make the necessary findings of fact to support the disqualification order. Because we conclude that Therese waived her right to object to David's counsel due to untimeliness, we reverse. We also agree that the necessary basis for a conflict of interest disqualification was not established in this case.

The relevant facts are extensive but undisputed. David served Therese with a divorce summons and petition on May 21, 1996. Each document identified David's divorce counsel as Attorney John O. Olson, Braden & Olson, 716 Wisconsin Street, P.O. Box 940, Lake Geneva, WI 53147 and provided the law firm's phone number. On June 3, 1996, David appeared at the initial temporary hearing with Braden & Olson Attorney Christine Tomas and Therese appeared with Attorney Henry Sibbing. On June 24, 1996, Therese filed an order to show cause why Braden & Olson should not be held in contempt because "[i]t has been 17 days since temporary hearing on June 3, 1996 *and Petitioner's attorneys Braden & Olson* have failed to submit a temporary order for signature on a timely basis." (Emphasis added.) Sibbing withdrew as Therese's counsel on June 25, 1996.

Therese received a letter, dated June 27, 1996, from Tomas on Braden & Olson letterhead and later

253

attached a copy of the letter to her July 10, 1996 motion for contempt. On July 10, she also filed a reply to David's motion for contempt "by Braden & Olson Attorneys for David W. Batchelor." On July 15, 1996, a hearing occurred on the parties' cross-motions for contempt. David appeared with Tomas and Therese appeared with Attorney Mark A. Brellenthin of Dade & Brellenthin.

On August 16, 1996, Therese filed a § 813.12, STATS., domestic violence petition against David, which was heard before a family court commissioner on August 22, 1996.[1] At the injunction hearing, Therese appeared pro se[2] and orally objected, for the first time, to Tomas appearing as David's counsel. Therese alleged that she had contacted the Braden & Olson firm on February 20, 1996, and had engaged in a fifteen-minute conversation with Attorney Kurt Van Buskirk. She also claimed that during that conversation she had revealed confidential information to Van Buskirk about her relationship with David. However, Van Buskirk was no longer with the Braden & Olson firm. David responded to Therese's objection as being untimely and also upon substantive grounds. The court commissioner scheduled an evidentiary hearing on the matter for September 16, 1996, and informed Therese that it would be her responsibility to subpoena Van Buskirk for the hearing.

At the September 16 hearing, the court commissioner took testimony from Therese regarding her

[1] The injunction procedure is referenced several times by both parties but the § 813.12, STATS., petition is not part of the record. Therese concedes that the most recent incident of abuse alleged in the petition was on May 13, 1996.

[2] It is unclear why Therese appeared without counsel from Dade & Brellenthin at this hearing.

conversation with Van Buskirk.[3] Van Buskirk was not subpoenaed by Therese. Based upon Therese's testimony, the court commissioner made a factual finding that a phone conversation took place between Therese and Van Buskirk. However, the commissioner continued the hearing in order to allow David to call Van Buskirk as a witness[4] because she was unsure "whether or not the information in the phone call disadvantages [Therese] in this litigation" or if the phone call established an attorney-client relationship. The matter was rescheduled for October 15, 1996, to allow for the appearance of Van Buskirk, and briefs were ordered on the question of whether an attorney-client relationship was established and requesting the parties to supply any existing precedents concerning imputed disqualification.

The next hearing took place on October 17, 1996, before a circuit court judge[5] who relied on the court commissioner's factual finding that a phone conversation occurred between Therese and Van Buskirk and stated that "[t]here really aren't any factual issues" because "there's already been a factual basis estab-

---

[3] Therese offered a copy of her phone "log" purportedly faxed from the phone company which she claimed indicated that on February 20, 1996, there was a seventeen-minute phone conversation. There is nothing in the record that indicates whether the log showed what number Therese was connected to for the seventeen-minute call. The copy was illegible and was not accepted into the record as evidence.

[4] The court commissioner stated, "I am not . . . making a ruling without Mr. Van Buskirk. And at this point his testimony is essential."

[5] There is no indication in the parties' briefs or in the record as to how or why the matter was transferred from the court commissioner to the circuit court.

lished." The trial court then ruled that "confidences were shared by Therese Batchelor with Kurt Van Buskirk" and that Braden & Olson should be disqualified from representing David in both the § 813.12, STATS., injunction and ch. 767, STATS., divorce matters.[6] This court granted David's petition for leave to appeal the disqualification of counsel by order dated December 4, 1996.

We first address whether Therese waived her right to raise an attorney disqualification claim. Waiver is a voluntary and intentional relinquishment of a known right. *See Consumer's Coop. v. Olsen,* 142 Wis. 2d 465, 492, 419 N.W.2d 211, 221 (1988). Evidence sufficient to establish waiver must show that " 'the person against whom the waiver is asserted had at the time knowledge, actual or constructive, of the existence of his [or her] rights or facts upon which they depended.' " *Id.* (quoted source omitted). Intent to waive may be inferred as a matter of law by the conduct of the parties. *See id.*

Waiver of an attorney disqualification claim has not been addressed in Wisconsin case law. However, in other jurisdictions it has been widely held that in attorney disqualification matters the failure to raise a timely objection may result in waiver. *See Cox v. American Cast Iron Pipe Co.,* 847 F.2d 725, 729 (11th Cir. 1988).[7] The rationale behind this rule was explained

---

[6] After ruling on the disqualification as it related to the injunction, the circuit court then extended the disqualification to the divorce matter as well, reasoning that "it's best for all concerned . . . to err on the side of caution and order the disqualification of both files."

[7] *See also Trust Corp. v. Piper Aircraft Corp.,* 701 F.2d 85, 87–88 (9th Cir. 1983); *Central Milk Producers Coop. v. Sentry*

succinctly in *Central Milk Producers Coop. v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir. 1978), when the court held that "[t]his court will not allow a litigant to delay filing a motion to disqualify in order to use the motion as a later tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed."

Additionally, the related but distinct equitable doctrine of laches has been held to apply to an attorney disqualification claim because it is "an equitable, not a legal, matter." *Jackson v. J.C. Penny Co.,* 521 F. Supp. 1032, 1034 (N.D. Ga. 1981). In applying the doctrine of laches, our supreme court has held that for laches to arise there must be unreasonable delay, knowledge of the course of events and acquiescence therein, and prejudice to the party asserting the defense. *See Paterson v. Paterson,* 73 Wis. 2d 150, 153, 242 N.W.2d 907, 909 (1976). We apply each of the three *Paterson* elements, the second of which is consistent with the requirements of waiver, to this case.

The first *Paterson* prong relates to whether the delay was unreasonable. To determine whether Therese's delay was unreasonable, we look to the facts. When the principal facts and reasonable inferences drawn therefrom are undisputed, as herein, we are not bound by the trial court's findings of fact. *See State v. Williams,* 104 Wis. 2d 15, 21–22, 310 N.W.2d 601, 604–05 (1981). It is well settled in Wisconsin that:

> "A court of equity applies the rules of laches according to its ideas of right and justice, and the

---

*Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir. 1978); *In re Yarn Processing Patent Validity Litig.,* 530 F.2d 83, 90 (5th Cir. 1976); *Redd v. Shell Oil Co.,* 518 F.2d 311, 315 (10th Cir. 1975); *Glover v. Libman,* 578 F. Supp. 748, 760 (N.D. Ga. 1983).

courts have never prescribed any specific period applicable to every case, like the statute of limitations; and what constitutes a reasonable time within which the suit must be brought depends upon the facts and circumstances of each particular case."

*Diehl v. Dunn,* 13 Wis. 2d 280, 286, 108 N.W.2d 519, 522 (1961) (quoted source omitted).

Therese appeared twice at divorce hearings where a Braden & Olson attorney represented David and did not raise the disqualification issue.[8] She was continuously aware that the Braden & Olson firm was representing David from the time that she was served with the divorce pleadings (May 21, 1996) containing the law firm's name and address until the time she raised her objection (August 16, 1996). During that period, Therese brought a contempt motion against Braden & Olson and responded directly to Braden & Olson in its capacity as counsel for David in a contempt motion brought against her. Her objection was made several months after the commencement of the divorce action. We are satisfied that the delay was unreasonable.

We now turn to the second prong of the *Paterson* laches test—knowledge of the course of events and acquiescence therein. A "slight delay, accompanied by circumstances of negligence, apparent acquiescence, or change of defendant's position, has been held suffi-

---

[8] David argues that Therese was also aware of Braden & Olson's representation of David because the firm was representing him in a criminal matter prior to her objection. Therese contends that her counsel sent a letter to Tomas several weeks prior to August 16, 1996, requesting that Braden & Olson disqualify itself. Because these contentions are not supported by the record before us, they will not be considered.

cient" to sustain a defense of laches. *Likens v. Likens,* 136 Wis. 321, 327, 117 N.W. 799, 801 (1908). We are satisfied that Therese had notice and knowledge that Braden & Olson was representing David on May 21, 1996, and that her failure to raise the issue at the outset of the proceedings leads to the inference that she had acquiesced to the firm's representation of David. Her timely knowledge of the firm's representation and her conduct in failing to take prompt action also support waiver as a matter of law.

The third prong of the *Paterson* test is that of prejudice to the other party. We are satisfied upon this record that substantial preparation was done on David's behalf by Braden & Olson prior to Therese's belated disqualification motion. There were multiple court appearances, motions filed, motions responded to, witnesses subpoenaed, documents drafted (including the divorce pleadings) and consultations with Therese and her counsel. Therese admitted to contacting five or six area law firms before she chose her attorney. Disqualification of the Braden & Olson firm could also adversely limit David's ability to retain local counsel; in fact, record documents suggest that he has already been compelled to retain counsel outside of the local area. We conclude that Therese's failure to file a timely objection to Braden & Olson's representation of David is prejudicial to him in terms of time and money.

In sum, we conclude that Therese waived her right to raise the conflict of interest issue because: (1) she had knowledge of David's divorce counsel in May, (2) her objection in August was untimely, (3) the delay in objecting was unreasonable, (4) her failure to object earlier resulted in an inferred acquiescence to Braden & Olson's involvement, and (5) David would be

prejudiced by the disqualification of the Braden & Olson firm. Because Therese's waiver of her right is supported by both the application of the legal requirements for a finding of waiver and under the doctrine of laches, we reverse and remand for reinstatement of Braden & Olson as David's counsel.

Normally we would conclude this opinion based upon our above holding which disposes of the appellate issue. However, because the trial court considered the disqualification on substantive grounds, we will also address the issue of whether the Rules of Professional Conduct require that Braden & Olson be disqualified. Motions to disqualify are reviewed under the misuse of discretion standard. *See State v. Miller,* 160 Wis. 2d 646, 654, 467 N.W.2d 118, 120 (1991). In *Jesse v. Danforth,* 169 Wis. 2d 229, 485 N.W.2d 63 (1992), our supreme court adopted the standard of review set forth in *Berg v. Marine Trust Co.,* 141 Wis. 2d 878, 887, 416 N.W.2d 643, 647 (Ct. App. 1987):

> The trial court "possesses broad discretion in determining whether [attorney] disqualification is required in a particular case, and the scope of our review is limited accordingly." Generally, we will not find an abuse of discretion if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the trial court's decision. However, "we have never hesitated to reverse discretionary determinations where the exercise of discretion is based on an error of law."

*Jesse,* 169 Wis. 2d at 245–46, 485 N.W.2d at 69.

The legal basis underlying Therese's motion is ch. SCR 20, "Rules of Professional Conduct for Attorneys." In Wisconsin an attorney must be disqualified when it is established that (1) an attorney-client relationship

existed between a party and the attorney, and (2) that attorney is now representing an adverse party in a substantially related matter. *See Burkes v. Hales,* 165 Wis. 2d 585, 591, 478 N.W.2d 37, 40 (Ct. App. 1991). The determination of both parts of the test are mixed questions of law and fact for the trial court. *See id.* at 592, 478 N.W.2d at 40.

However, because this issue involves the former law firm of Van Buskirk and not Van Buskirk himself, we turn to the rule of imputed disqualification, which reads:

> **Imputed disqualification: general rule. (a)** While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so . . . .
>
> . . . .
>
> **(c)** When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
>
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) *any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.*

SCR 20:1.10 (West 1997) (emphasis added).

Therese's theory is that because Van Buskirk had information she volunteered about her marriage and that he gave her advice, his former firm, Braden &

Olson, should now be precluded from representing David.[9]

For purposes of this analysis, we will not disturb the factual findings of the court commissioner that a conversation took place or the trial court's additional finding that the conversation established an attorney-client relationship.[10] It is undisputed that the subject phone call to Van Buskirk and David's representation by Braden & Olson are the same or substantially related.

However, that does not fully resolve the conflict of interest question. The second prong of SCR 20:1.10(c) requires a further determination of whether "any attorney remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter." This record is devoid of any evidence in that regard. Therese has provided only limited testimony regarding the content of her conversation with Van Buskirk and there is no record evidence which suggests, even inferentially, that Van Buskirk's knowledge could be imputed to any other Braden & Olson attorney.

[9] Therese did not testify as to what advice Van Buskirk gave her.

[10] While the parties do not raise or argue the merits of a family court commissioner's involvement in attorney disqualification matters, we note that §§ 757.69 and 767.13(2), STATS., concerning family court commissioners' powers and duties, do not authorize their involvement in attorney disqualifications. We also note that where a § 813.12, STATS., matter is raised during the pendancy of a divorce action before a court commissioner, he or she is to submit the matter to the trial court within five days. *See* § 767.23(1m), STATS. Had the court commissioner referred the injunction proceeding to the trial court and had the trial court been involved in the disqualification motion from the beginning, this appeal might been avoided.

Because the only evidence relied upon is the testimony of Therese, and she was unable to provide any evidence which suggested that the information she gave to Van Buskirk was passed to another attorney, we conclude that the applicable standard was not met.

The trial court erred in finding that a complete factual record had been established at the earlier hearings before the family court commissioner. Had we not determined that the disqualification claim was waived by Therese's conduct and lack of timely objection, we would be obliged to remand the matter to the trial court for further factual inquiry as to whether the second prong of the applicable rule is satisfied. Therese's phone call testimony, without further evidence as to its disclosure to other members of the law firm, is not enough to satisfy the second prong of SCR 20:1.10(c).

Because Therese waived her right to object to David's counsel, the order disqualifying Braden & Olson from representing David in the divorce action and the injunction proceedings must be reversed.

*By the Court.*—Order reversed.