STATE of Wisconsin, Plaintiff-Respondent,

v.

David KALK, Defendant-Appellant.†

Court of Appeals

*No. 99–1164–CR. Submitted on briefs January 21, 2000.—Decided February 23, 2000.*

## 2000 WI App 62

(Also reported in 608 N.W.2d 428.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John A. Pray* of *Frank J. Remington Center, University of Wisconsin Law School.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Michael R. Klos*, assistant attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1.  NETTESHEIM, J.   David Kalk argues that his criminal convictions should be reversed because of a conflict of interest on the part of the prosecuting attorney who had previously represented Kalk in an unrelated 1987 criminal proceeding. We reject Kalk's argument because he has failed to show any actual

conflict of interest or prejudice. We affirm the judgment and order.

## Facts

¶ 2.   Robert Wells, Jr. is the current district attorney for Sheboygan county. In 1987, Wells, then a public defender, represented Kalk on charges of disorderly conduct, battery, criminal damage to property, endangering safety by reckless conduct and carrying a concealed weapon. The charges were resolved without a trial and Kalk was placed on probation under a withheld sentence.

¶ 3.   On February 4, 1998, the State filed the criminal complaint in this case. The complaint charged Kalk with two counts of disorderly conduct pursuant to WIS. STAT. § 947.01 (1997–98),[1] one count of battery to a probation agent pursuant to WIS. STAT. § 940.20(2m), and one count of resisting an officer pursuant to WIS. STAT. § 946.41(1). Following a bindover on the battery charge, Kalk pled not guilty to all of the charges and requested a jury trial.

¶ 4.   Prior to the jury trial, Wells advised Kalk's lawyer that he had previously represented Kalk. In addition, Kalk himself advised his lawyer that Wells had previously represented him. However, neither Wells nor Kalk's lawyer brought the matter to the attention of the trial court. Prior to this case, Kalk had accumulated approximately twenty criminal convictions in Sheboygan county. In one of those cases, Kalk sought a special prosecutor because Wells was the district attorney. In that case, the court declined to

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

appoint a special prosecutor, but did disqualify Wells from personally prosecuting the matter.

¶ 5.   In this case, Wells represented the State at the jury trial. The jury found Kalk guilty of the two disorderly conduct counts and the battery charge, but not guilty of the resisting charge. The trial court imposed prison terms totaling eleven years.[2] Postconviction, Kalk brought a motion seeking a new trial, contending that Wells had a conflict of interest by virtue of the prior representation. In support of his motion, Kalk testified that while Wells was his attorney in 1987, he had told Wells in confidence that he was a drug dealer. He also testified that Wells had told him that the charges could have been more severe, that Kalk got off too lightly and that if Wells ever became a prosecutor, "he'd make sure that I would go to prison on something like this." Kalk argued that these confidential exchanges influenced Wells in his prosecution of this case.

¶ 6.   Wells also testified at the postconviction hearing. He denied that Kalk had told him that he was a drug dealer and further denied making the statements that Kalk attributed to him.

¶ 7.   The trial court rejected Kalk's testimony on credibility grounds. Instead, the court adopted Wells's testimony. The court further determined that Wells's prosecution of this case was not influenced by his prior representation of Kalk and that Kalk had not established an actual conflict of interest. Kalk appeals.

---

[2] Kalk was convicted and sentenced as a habitual criminal pursuant to WIS. STAT. § 939.62.

### *Discussion*

### 1. *The Trial Court's Role*

¶ 8. We begin by addressing a matter not at issue, but nonetheless worthy of discussion. The potential conflict of interest posed by Wells's prior representation of Kalk should have been brought to the attention of the trial court. That would have allowed the court to explore solutions to the potential problem. First and foremost, the court could have inquired whether Kalk objected to Wells serving as the prosecutor and, if not, to make an appropriate record documenting Kalk's waiver to the potential conflict of interest. *See State v. Cobbs*, 221 Wis. 2d 101, 105, 584 N.W.2d 709 (Ct. App.), *review denied*, 222 Wis. 2d 674, 589 N.W.2d 629 (Wis. Dec. 8, 1998) (Nos. 97–1521–CR, 97–2403–CR). Second, regardless of whether Kalk consented or objected to Wells's role as the prosecutor, the trial court could have nonetheless exercised its discretion regarding whether to disqualify Wells because an actual conflict or a serious potential conflict existed. *See id.* at 105–06; *State v. Love*, 227 Wis. 2d 60, 81, 594 N.W.2d 806 (1999).

¶ 9. In *State v. Kaye*, 106 Wis. 2d 1, 315 N.W.2d 337 (1982), the supreme court directed the trial courts of this state to address at the arraignment any potential conflict of interest problem presented by an attorney's dual representation of codefendants. *See id.* at 14. The court issued this directive to "avoid such problems in the future." *Id.* The supreme court echoed the *Kaye* directive in *Love*, a case which presented the reverse of this case. *See Love*, 227 Wis. 2d at 62–63. There, the defendant's attorney at sentencing following revocation of probation had previously represented the

103

State when the defendant was originally placed on probation under a withheld sentence. *See id.*

¶ 10.　In a *Kaye* situation, the potential conflict problem can be addressed by the trial court on its own because the attorney's dual representation of the multiple defendants will be self-evident. However, in cases like this and like *Love*, the trial court presumably will not be aware of the attorney's prior "reverse" representation. Thus, it properly falls to the lawyers who have knowledge of the potential conflict, and particularly to the lawyer who has the potential conflict, to bring the matter to the early attention of the trial court. Therefore, we construe the supreme court's directive in *Love* to apply not only to the trial court (assuming the court has knowledge of the potential conflict), but also to the attorneys who have knowledge of the potential conflict, and especially to the attorney who faces the potential conflict.

¶ 11.　Had that occurred in this case, the trial court could have dealt with the problem early on and we likely would not be faced with this appeal.

### 2.　*Standard of Review*

¶ 12.　We now turn to the merits. No case has expressly set out our standard of review for a conflict of interest claim. However, the question has been addressed where the alleged conflict serves as a basis for a claim of ineffective assistance of counsel. In *Love*, the supreme court said, "In criminal cases, conflict of interest claims involving attorneys are treated analytically as a sub-species of ineffective assistance of counsel." *Love*, 227 Wis. 2d at 68. The court also set out the often stated standard of review for an ineffective assistance of counsel claim:

An appellate court will not overturn a trial court's findings of fact concerning the circumstances of the case and the counsel's conduct and strategy unless the findings are clearly erroneous. However, whether counsel's performance was deficient and whether the deficient performance prejudiced the defense are questions of law which this court decides without deference to the court of appeals or the circuit court.

*Id.* at 67 (citations omitted).

■

¶ 13. Although this is not an ineffective assistance of counsel claim, we nonetheless see the *Love* standard of review as instructive because the core question is whether Wells had a conflict of interest. Transposing from *Love* in this "reverse representation" case, we hold that the appropriate standard of review requires us to honor the factual findings of the trial court unless clearly erroneous. However, the ultimate question of whether an actual conflict of interest existed is a conclusion of law that we decide without deference to the trial court's ruling. Nonetheless, we value a trial court's decision on such a matter. *See Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993).

### 3. *Legal Test for Conflict of Interest*

¶ 14. Next, we address the legal principles for determining whether a conflict of interest exists. Here again we find guidance in *Love*, recognizing that there the conflict of interest claim was targeted at the lawyer representing the defendant whereas here the claim is targeted against Wells, the prosecuting attorney.

¶ 15.  As we have noted, when the potential conflict of interest issue is presented prior to or at trial, the trial court may accept a waiver from the defendant or, regardless, disqualify the attorney. *See Cobbs*, 221 Wis. 2d at 105–06. These options protect the integrity and fairness of the trial process. *See Love*, 227 Wis. 2d at 81–82. But here, as we have also noted, the conflict of interest issue was not presented to the trial court until the postconviction proceedings. In that setting, the *Love* court made the following observation:

> In a post-conviction motion, the institutional factors are different. If a defendant has received a fair trial, the court has an institutional interest in protecting the finality of its judgment. Moreover, theoretical imperfections and potential problems ought not be treated more seriously than real deficiencies and real problems, for such skewed values would undermine public confidence in the administration of justice.

*Id.* at 82.

¶ 16.  Thus, in a postconviction setting, the defendant must show by clear and convincing evidence that the attorney had an actual conflict of interest. *See id.* at 71. An actual conflict of interest exists when the attorney is actively representing a conflicting interest. *See id.* An actual conflict is not "a mere possibility or suspicion of a conflict [that] could arise under hypothetical circumstances." *Kaye*, 106 Wis. 2d at 8 (quoting *State v. Medrano*, 84 Wis. 2d 11, 28, 267 N.W.2d 586 (1978)). Rather, an actual conflict occurs when an "attorney's advocacy is somehow adversely affected by the competing loyalties." *State v. Owen*, 202 Wis. 2d 620, 639, 551

N.W.2d 50 (Ct. App. 1996). Thus, Kalk had to demonstrate that Wells had a competing loyalty that adversely affected Kalk's interests.[3]

### 4. *Application of the Legal Principles to this Case*

¶ 17.   The State acknowledges that Wells's serial representation in this case created a potential conflict of interest. But as the preceding discussion reveals, a potential conflict is not enough in a postconviction setting. Rather, Kalk had to demonstrate an actual conflict.

¶ 18.   Kalk's argument in support of his claim that Wells had an actual conflict of interest rests principally on his testimony at the postconviction hearing. Kalk testified that while Wells was his attorney in 1987, he told Wells that he was a drug dealer. He also testified that Wells told him that the 1987 charges could have been more severe, that Kalk got off too lightly on those charges, and that if he ever became a prosecutor, he would make sure that Kalk went to prison. Kalk argues that these communications influenced Wells's prosecutorial decisions in this case.

¶ 19.   However, Wells expressly denied all of these statements. The trial court expressly rejected Kalk's credibility on this point and, instead, adopted Wells's testimony. Under our standard of review, we properly defer to the trial court's findings of fact unless clearly erroneous. *See Love*, 227 Wis. 2d at 67. In addition, we are to give due regard for the trial court's ability to assess the credibility of the witnesses. *See*

---

[3] Thus, we must reject Kalk's argument that Wells's prior representation represented an actual conflict of interest per se. By setting out the test for an actual conflict of interest, the supreme court in *Love* rejected a per se approach. *See State v. Love*, 227 Wis. 2d 60, 78–82, 594 N.W.2d 806 (1999).

WIS. STAT. § 805.17(2). Kalk offers no reason why we should overturn the trial court's credibility and factual determinations. We uphold the court's findings as not clearly erroneous.

¶ 20.   Even apart from the trial court's credibility and fact-finding determinations, the record in this case otherwise fails to support Kalk's claims that Wells had an actual conflict of interest or that Kalk was prejudiced. The 1987 case and the instant case were wholly separate and discrete from each other. The events were unrelated and were separated by an eleven-year period. The victims and the witnesses were different. The trial court expressly found that "Wells never derived any information from [the 1987 case] . . . which was used in any way to charge, prosecute or convict the defendant." Thus, Wells was not operating under any competing loyalties in his prosecution of this case.

¶ 21.   In summary, Kalk failed to show, even on a prima facie basis, that the State's prosecution of him was influenced by Wells's prior representation. *See* *State v. Smith*, 198 Wis. 2d 584, 591, 543 N.W.2d 512 (Ct. App. 1995). Instead, Kalk's contention that Wells had a conflict of interest is the "mere possibility or suspicion" condemned by *Love*. *See Love*, 227 Wis. 2d at 69–70 (quoting *Kaye*, 106 Wis. 2d at 8). Kalk had to demonstrate that Wells had a competing loyalty that adversely affected Kalk's interests in this case. In this effort, Kalk has failed.

## *Conclusion*

¶ 22.   We uphold the trial court's determination that Wells did not have an actual conflict of interest in his role as the prosecutor in this case.

*By the Court.*—Judgment and order affirmed.