STATE of Wisconsin,
Plaintiff-Respondent,

v.

Christopher M. MEDINA,
Defendant-Appellant.†

Court of Appeals

*No. 2005AP2314–CR. Submitted on briefs February 6, 2006.
—Decided March 30, 2006.*

2006 WI App 76

(Also reported in 713 N.W.2d 172.)

† Petition to review denied 6-14-06.

LUNDSTEN, P.J., concurs.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel P. Ryan*, of *Flottmeyer, Burgos, Ryan & Sayner*, La Crosse.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Juan B. Colas, asst. attorney general*, and *Peggy A. Lautenschlager, attorney general*.

Before Lundsten, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. Chris Medina appeals a judgment of conviction on eleven charges of burglary

contrary to WIS. STAT. § 943.10(1)(a) (2001-02),[1] as a repeat offender, and the order denying his motion for a new trial. The principal issues on appeal are: (1) did the circuit court erroneously exercise its discretion in denying Medina's motion, brought on the morning of jury selection, to disqualify the district attorney because he had, approximately three years earlier, represented Medina in another criminal case that, according to Medina, is substantially related to this case? and (2) did the circuit court err in denying Medina's postconviction motion that asserted he was entitled to a new trial because the district attorney had a conflict of interest?

¶ 2. We conclude that a circuit court may, in the proper exercise of its discretion, deny a motion to disqualify a prosecutor under the "substantial relationship" standard on the ground that the motion is untimely. The circuit court here properly exercised its discretion in denying Medina's motion, brought on the morning of jury selection, on the ground that it was untimely. Because the circuit court correctly denied the motion, when Medina moved post-verdict for a new trial on the ground that the district attorney had a conflict of interest because of the prior representation, Medina had to show by clear and convincing evidence that the district attorney had a competing loyalty that adversely affected Medina's interests. Based on the facts found by the circuit court, we conclude as a matter of law that Medina did not establish an adverse affect on his interests. Accordingly, the circuit court correctly concluded Medina was not entitled to a new trial. We therefore affirm.

[1] All other references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## BACKGROUND

¶ 3. The criminal complaint, charging Medina with thirteen counts of felony burglary, as a repeat offender, was filed on April 15, 2004; an amended information charging Medina with only eleven counts of felony burglary, as a repeat offender, was later substituted. The jury trial originally scheduled for July 12, 2004, was postponed. At an August 30 status conference, a jury trial was scheduled to begin October 12, 2004, with jury selection on October 11.

¶ 4. Before jury selection began on October 11, defense counsel moved for an adjournment of the trial and to have a new prosecutor assigned on the ground that the district attorney prosecuting the case had previously represented Medina at sentencing for a misdemeanor theft after revocation of probation. Counsel explained he had just learned this four days ago, in preparing for trial. He argued that the prior case, involving theft of a car stereo, was substantially related to the charges in this case, which involved entering vehicles and garages and stealing property.

¶ 5. The district attorney stated that, when the defense counsel called to tell him about his prior representation of Medina, he had no recollection of it. He had in fact been appointed on June 12, 2001, to represent Medina when he was sentenced for misdemeanor theft after probation was revoked; another attorney had represented Medina through the plea and original sentencing. The district attorney did not remember what the facts of the misdemeanor theft were, and, in his view, even though the prior case and this case both involved property crimes, they were not substantially related.

¶ 6. The circuit court denied the motion. It concluded that, while there did not appear to be a conflict of interest, if there were, Medina had waived the issue. The court stated that a standard scheduling order had been entered on June 9, 2004, which established a June 28 date for motions such as this to be filed; and Medina knew who the prosecutor was and could have informed his attorney of the prior representation in time to file a timely motion. The court noted that the jury panel had been called in and was ready to go. The court viewed Medina's failure to bring this to the attention of his attorney sooner as an effort to delay the trial.

¶ 7. The trial took place and Medina was convicted on all eleven counts. He was sentenced to seven years' confinement and three years' extended supervision on each count, all concurrent. He filed a motion for a new trial, asserting that the district attorney had a conflict of interest because of prior representation in a substantially related case, and this constituted a violation of Medina's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, sections 7 and 8 of the Wisconsin Constitution, as well as a violation of SCR 20:1.9, Wisconsin's Rules of Professional Conduct for Attorneys. The accompanying affidavit of counsel averred that the presentence report referred to the earlier misdemeanor theft, and at sentencing the prosecutor referred the court to Medina's prior record, pointed out that Medina had been convicted of the misdemeanor theft, and referred to prior probation revocations, which included that for the misdemeanor theft.

¶ 8. The district attorney testified at the hearing on the motion. Consistent with his prior statements, he testified that he had not remembered that he had represented Medina until it was brought to his atten-

tion shortly before this trial. He identified his billing records from his representation of Medina, which showed that he had a conference with Medina and prepared for a hearing on July 9, 2001, spending .6 of an hour; and on July 11, 2001, he spent an hour in conference with Medina and a half hour in court for the sentencing. The district attorney testified that he had no recollection of those meetings, of his conversations with Medina, or of representing him. He agreed that his conversations with Medina were privileged and that it was reasonable to assume he talked to Medina about the events that led up to the probation revocation and his prior involvement with criminal activity.

¶ 9. The argument to the court at the hearing focused on this court's decision in *State v. Tkacz*, 2002 WI App 281, 258 Wis. 2d 611, 654 N.W.2d 37.[2] Medina's position was that, because he had brought the disqualification motion before trial, he did not have to show that the district attorney had actually obtained or used confidential information from him. According to Medina, under *Tkacz*, he had to show only that the current case and the prior case were substantially related and that the district attorney could have obtained information from the prior representation that was relevant to this case. Medina also argued that the

---

[2] In response to the court's questions, Medina's counsel asserted that the constitutional basis for his motion was the right to due process; he apparently agreed that it was not based on the Sixth Amendment right to counsel. However, as we discuss later, the standard for disqualification adopted in *State v. Tkacz*, 2002 WI App 281, 258 Wis. 2d 611, 654 N.W.2d 37, is based on SCR 20:1.9, Wisconsin's Rules of Professional Conduct for Attorneys. Medina did not provide constitutional case law authority in the circuit court, and he does not provide such authority on appeal.

district attorney's comments at sentencing, as described in the affidavit, showed that he had used information about the misdemeanor theft against Medina.

¶ 10. The district attorney's position was that under *Tkacz* Medina had to show he had obtained confidential information from Medina that was relevant to this case. Medina had not made this showing, the district attorney argued, because any information about Medina that he referred to at sentencing in this case was information he obtained from this case or from public records.

¶ 11. The circuit court denied the motion. It found that there had been no showing that the district attorney had used any confidential information from Medina in this case, and that the information he used at sentencing in this case was available from public records. The court viewed *Tkacz* as not establishing a clear rule to follow in this case. The court continued to consider it significant that the disqualification motion was brought just before jury selection "at the very last minute," when disqualification would have "put a hitch in the proceedings."

## ANALYSIS

¶ 12. On appeal Medina argues that the circuit court erred in denying his motion for a new trial because it applied an incorrect standard of law. Medina asserts that, because he brought a motion to disqualify the district attorney before trial, the court must disqualify the district attorney if there is a substantial relationship between this case and the case in which the district attorney previously represented him. According to Medina, under *Tkacz* a substantial relationship exists if the district attorney could have obtained confi-

462

dential information in the prior representation that is relevant to this case, and, he asserts, that standard is met in this case. Therefore, Medina concludes, he is entitled to a new trial.

¶ 13. The State disputes Medina's reading of *Tkacz*, arguing that there we concluded there was no substantial relationship because no relevant confidential information was actually obtained in the prior representation. The State also asserts that the circuit court properly took into account that Medina brought the motion just before jury selection instead of earlier. Finally, the State contends, there is no basis for concluding that Medina did not receive a fair trial.

¶ 14. Although the parties' arguments tend to merge the circuit court's denial of the motion to disqualify and the denial of the post-verdict motion, we analyze them separately. We first discuss the relevant case law and then address these issues: (1) did the circuit court erroneously exercise its discretion in denying the motion to disqualify brought on the day of jury selection? and (2) did the circuit court err in denying the postconviction motion for a new trial?

I. Case Law Background

¶ 15. In *Tkacz*, we adopted the "substantial relationship" standard for determining whether a prosecutor should be disqualified because he or she previously represented the defendant. 258 Wis. 2d 611, ¶¶ 9, 15.[3]

---

[3] We state in *Tkacz*, 258 Wis. 2d 611, ¶ 15, that "the 'substantial relationship' standard is the proper standard for analyzing whether *a conflict of interest exists . . .* where the defendant raises the issue prior to trial." (Emphasis added.) However, we also describe this standard as "avoid[ing] any

Under this standard, "where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are 'substantially related.' " *Id.*, ¶ 13 (citation omitted). We had previously applied the "substantial relationship" standard in civil cases, notably *Berg v. Marine Trust Co.*, 141 Wis. 2d 878, 884–85, 416 N.W.2d 643 (Ct. App. 1987); and in *Tkacz* we relied on our discussion of the standard in *Berg. Tkacz*, 258 Wis. 2d 611, ¶ 13.

¶ 16. The "substantial relationship" standard embodies SCR 20:1.9, Wisconsin's Rules of Professional Conduct for Attorneys. *Tkacz*, 258 Wis. 2d 611, ¶ 15. *See also Berg*, 141 Wis. 2d at 885–86, 890.[4] SCR 20:1.9 provides:

> **Conflict of interest: former client**. A lawyer who has formerly represented a client in a matter shall not:

---

potential impropriety" and "head[ing] off the conflict before it actually happens," *id.* (citations omitted), recognizing that the "substantial relationship" standard is not focused on whether an actual conflict of interest has already occurred. *See* ¶ 17 above. Thus, in the context of a disqualification motion, the "substantial relationship" standard is more accurately described as determining whether there is a potential for an adverse affect on the former client's interests, rather than as determining whether a conflict of interest actually exists.

[4] At the time *Berg v. Marine Trust Co.*, 141 Wis. 2d 878, 885–86, 416 N.W.2d 643 (Ct. App. 1987), was decided, the relevant provisions in SCR ch. 20 were SCR 20.21 and SCR 20.48, neither of which expressly referred to the "substantial relationship" standard. However, as we explained in *Berg*, the substantial relationship standard had been held by federal courts to " 'embod[y] the substance' " of the identical two provisions of the American Bar Association Code of Professional Responsibility. *Id.*

**(a)** represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation; or

**(b)** use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

¶ 17. We explained in *Berg* that a substantial relationship exists "if the factual contexts of the two representations are similar or related." 141 Wis. 2d at 889 (citations omitted). We also explained in *Berg* that it is irrelevant if the attorney actually obtained confidential information in the first representation or used it against the former client because "substantially related" means that the attorney "could have obtained confidential information in the first representation that would have been relevant in the second." *Id.* at 886 (citations omitted). *See also id.* at 891. In *Tkacz*, we quoted this definition from *Berg* of "substantially related." *Tkacz*, 258 Wis. 2d 611, ¶ 13. As we explained in *Berg*, the "heart of the substantial relationship standard is the presumption that a client will disclose confidences to his or her attorney . . . . [and] the presumption is considered irrebuttable because of the impropriety of testimonial inquiry into conversations between attorney and client to determine whether actual confidences were disclosed." 141 Wis. 2d at 891 n.5. In essence, the application of the substantial relationship standard, as we observed in *Tkacz*, insures that "the ensuing criminal [or civil] trial will avoid any potential impropriety" and provides "the opportunity to

465

'head off the conflict before it actually happens.' " 258 Wis. 2d 611, ¶ 15 (citation omitted).

¶ 18. Although disqualification of an attorney where the substantial relationship standard is met is an important means of ensuring compliance with ethical canons, *Berg*, 141 Wis. 2d at 887, we have held that failure to raise a disqualification claim in a timely manner may result in waiver. *Batchelor v. Batchelor*, 213 Wis. 2d 251, 256–59, 570 N.W.2d 568 (Ct. App. 1997). In *Batchelor*, we held that the party to a domestic abuse injunction and divorce proceeding waived the right to raise an attorney disqualification claim because: (1) she knew of the facts that formed the basis for the claim; (2) she unreasonably delayed in bringing the motion; (3) the failure to object earlier permitted an inferred acquiescence; and (4) the attorney had already done substantial work for the other party. *Id.* at 256–60.

¶ 19. In contrast to the "substantial relationship" standard for disqualification from further participation in a case, a different analysis applies when a criminal defendant claims for the first time in a postconviction motion that either the prosecutor or the defense counsel had a conflict of interest because of prior representation. In *State v. Love*, 227 Wis. 2d 60, 63, 594 N.W.2d 806 (1999), the supreme court considered an ineffective assistance of counsel claim based on the fact that the defense counsel at a second sentencing hearing had previously represented the State in the same case. The court concluded that

> in order to establish a Sixth Amendment violation on the basis of a conflict of interest in a serial representation case, a defendant who did not raise an objection at trial must demonstrate by clear and convincing evidence that his or her counsel converted a potential conflict of interest into an actual conflict of interest by

466

(1) knowingly failing to disclose to the defendant or the circuit court before trial the attorney's former prosecution of the defendant, or (2) representing the defendant in a manner that adversely affected the defendant's interests.

*Id.* at 82.[5] The *Love* court rejected the defendant's position that prejudice should be presumed when his attorney had previously represented the State in the same case. *Id.* at 78–79. The court explained that the circuit court's power to disqualify a defendant's attorney when there is an actual conflict of interest or serious potential for a conflict of interest protects the defendant's right to adequate representation and to a fair trial; that power protects, as well, the institutional interests in ensuring that criminal trials are conducted within the ethical standards of the profession, appear fair to all who observe them, and remain free from future attacks. *Id.* at 81–82 (citing *State v. Miller*, 160 Wis. 2d 646, 653, 467 N.W.2d 118 (1991)). However, the court explained:

---

[5] "Serial representation occurs when an attorney represents one party in a case, then switches sides to represent the other party in the same proceeding or in an unrelated case." *State v. Love*, 227 Wis. 2d 60, 73, 594 N.W.2d 806 (1999). This contrasts with a "multiple representation" situation, where the conflict or potential conflict of interest arises out of one attorney representing more than one defendant, as in *State v. Kaye*, 106 Wis. 2d 1, 7, 315 N.W.2d 337 (1982), discussed in *Love*, 227 Wis. 2d at 68–70. Where the attorney presently representing the defendant has the conflict or potential conflict of interest, either because of prior prosecution of the defendant or because of multiple representation, the defendant's Sixth Amendment right to effective counsel is implicated. *See Love*, 227 Wis. 2d at 68. The Sixth Amendment is not implicated, of course, when it is the prosecutor that has the conflict or potential conflict of interest because of prior representation of the defendant, as in the current case.

> In a post-conviction motion, the institutional factors are different. If a defendant has received a fair trial, the court has an institutional interest in protecting the finality of its judgment. Moreover, theoretical imperfections and potential problems ought not be treated more seriously than real deficiencies and real problems, for such skewed values would undermine public confidence in the administration of justice.

*Love*, 227 Wis. 2d at 82.

¶ 20. This court has applied the *Love* standard of actual conflict of interest to a defendant's postconviction motion for a new trial on the ground that the prosecutor had previously represented him in another criminal case. *State v. Kalk*, 2000 WI App 62, 234 Wis. 2d 98, 608 N.W.2d 428. As in *Love*, the defendant in *Kalk* had not raised the issue earlier, and we concluded that the *Love* court's reasoning for requiring a showing of an actual conflict of interest was therefore applicable. *Kalk*, 234 Wis. 2d 98, ¶¶ 15–16. Consistent with *Love*, we stated that an actual conflict of interest occurs when an attorney's competing loyalties adversely affect the former client's interests. *Kalk*, 234 Wis. 2d 98, ¶ 16.[6]

---

[6] In *State v. Kalk*, 2000 WI App 62, 234 Wis. 2d 98, 608 N.W.2d 428, we did not refer to the alternative ground for an actual conflict of interest in *Love*: a knowing failure by defense counsel to disclose to the defendant or the court before trial that the attorney previously prosecuted the defendant. *Love*, 227 Wis. 2d at 82. It is not clear from our *Kalk* opinion whether we did not refer to this ground because we viewed it as applying only where the claim of conflict of interest is made against defense counsel; or because in *Kalk* the district attorney did advise the defendant's lawyer prior to trial that he had previously represented the defendant, although neither party brought this to circuit court's attention at that time. *Kalk*, 234 Wis. 2d 98, ¶ 4.

## II. Disqualification Motion

■

¶ 21. We consider first the circuit court's denial of the disqualification motion. Medina's position is that the court erred in deciding that the motion was untimely and he therefore waived the right to assert that the district attorney should be disqualified. Medina's counsel's affidavit, filed with the postconviction motion, avers that Medina did not waive his objection in writing to the prosecutor's participation in this case, as required by SCR 20:1.9(a). However, it does not follow that a circuit court therefore lacks the authority to deny a motion for disqualification on the grounds of untimeliness, and we have already recognized that authority in the civil context. *Batchelor*, 213 Wis. 2d at 256–60. The question therefore is whether a court in a criminal proceeding has this authority. More specifically: may a circuit court deny a criminal defendant's motion to disqualify the prosecutor under the "substantial relationship" standard on the ground that it is untimely.[7] Whether the circuit court may do so presents a question of law. *See id.* at 256–57 (implicitly treating as a

[7] We limit our inquiry to a motion to disqualify the prosecutor. As noted in footnote 4, a defendant's Sixth Amendment right to effective assistance of counsel is implicated when disqualification of defense counsel is at issue, and the circuit court has obligations designed to protect that right. *See State v. Miller*, 160 Wis. 2d 646, 658–59, 467 N.W.2d 118 (1991) (in a multiple representation case, the circuit court properly approved a disqualification of an attorney over the objection of the defendant because of a serious potential for conflict of interest). *See also State v. Cobbs*, 221 Wis. 2d 101, 105, 584 N.W.2d 709 (Ct. App. 1998) (discussing colloquy necessary for a defendant's valid waiver of his or her attorney's actual or serious potential conflict of interest).

question of law the issue whether a disqualification claim may be waived if untimely). We review questions of law de novo. *See Kalk*, 234 Wis. 2d 98, ¶ 13.

¶ 22. *Tkacz* does not answer this question because there was no issue concerning the timeliness of the disqualification motion in that case. However, *Love*, 227 Wis. 2d at 72–73, and *Kalk*, 234 Wis. 2d 98, ¶¶ 8–11, both refer to the importance of bringing a motion to disqualify so that the circuit court can address the potential conflict at the earliest stage possible. Indeed the court in *Love*, citing to *Berg*, 141 Wis. 2d 878, states that "Wisconsin case law clearly states that an attorney may be disqualified for a potential conflict of interest if the issue is raised in a *timely* manner." *Love*, 227 Wis. 2d at 77 n.8 (emphasis added). The later in the proceedings a disqualification motion is brought, the more waste there is of judicial resources.

¶ 23. From the defendant's viewpoint, the defendant will typically know that the prosecutor previously represented him or her. We can see no reason why, if the defendant knows that and believes the prior case is substantially related, he or she should not be expected to bring a motion to disqualify at the earliest reasonable opportunity. One of the reasons we decided in *Batchelor* to permit waiver is that we did not want to allow delay of disqualification motions for tactical reasons. 213 Wis. 2d at 257. This concern is equally applicable in criminal cases.

■

¶ 24. We conclude the circuit court may, in the proper exercise of its discretion, deny a motion to disqualify a prosecutor under the substantial relationship standard if the motion is untimely. The circuit court properly exercises its discretion when it applies the correct legal standard to the relevant facts of record

and reaches a reasonable result using a rational process. *State v. Watson*, 227 Wis. 2d 167, 186, 595 N.W.2d 403 (1999) (citations omitted). In the context of a motion to disqualify a prosecutor under the substantial relationship standard, a non-exclusive list of factors to consider in deciding if the motion is timely brought include: when the defendant knew who the prosecutor was and that the prosecutor had previously represented the defendant; whether and when the prosecutor realized he or she had previously represented the defendant; applicable time periods established in scheduling orders; at what stage in the proceeding the motion is brought; reasons why the motion was not brought sooner; prejudice to the State because of the timing of the motion if the motion is granted; and prejudice to the defendant if the motion is denied. *See Batchelor*, 213 Wis. 2d at 256–60.

■

¶ 25. Applying this standard here, we conclude the circuit court properly exercised its discretion in denying Medina's disqualification motion on the ground of untimeliness. Although defense counsel had just learned of the prior representation a few days earlier, the court could reasonably infer that Medina knew much earlier in this case who the district attorney was and knew he was the same person who represented Medina at a sentencing three years earlier. In the absence of any explanation why Medina did not bring this to the attention of his attorney earlier, the court could reasonably infer that Medina was raising it just before jury selection for purposes of delay. The court implicitly credited the district attorney's statement that he had not remembered the prior representation before defense counsel told him, which the court could properly do. The court also properly considered the sched-

uling orders it had entered and that the jury panel had been called. Finally, nothing presented to the circuit court indicated that there would be any prejudice to Medina in denying the motion: the district attorney could not remember anything from the prior representation and Medina presented little detail about the prior case. We recognize that, as we have described in paragraph 17, the substantial relationship standard inquires into the relationship between the two cases, and not into whether confidential information was actually given to the attorney and whether the attorney remembers that information. Nonetheless, the likelihood of an actual conflict of interest is an appropriate factor to take into account in deciding whether to deny as untimely a disqualification motion against a prosecutor based on the substantial relationship standard.

III. Postconviction Motion

¶ 26. In his postconviction motion for a new trial, Medina argued both that the district attorney should have been disqualified under the substantial relationship standard and that the district attorney had used information obtained in the prior representation against Medina at sentencing in this case. However, we understand Medina's position to be that, because he brought a disqualification before trial, he was entitled to a new trial if there was a substantial relationship between the prior case and this case, even if the district attorney had not obtained or used any information. His contention is that the circuit court erred because it did not apply the substantial relationship standard as we defined it in *Tkacz*—whether relevant confidential information *could* have been obtained in the prior representation—but instead considered whether the district attorney had *actually* obtained confidential

information in the prior representation and used it against Medina in this case.

¶ 27. We agree with Medina that the circuit court in its decision essentially employed the *Love/Kalk* actual conflict of interest standard. The threshold inquiry is therefore whether the substantial relationship standard or the actual conflict of interest standard is applicable in determining whether Medina is entitled to a new trial. Whether the court used the proper legal standard presents a question of law, which we review de novo. *Tkacz*, 258 Wis. 2d 611, ¶ 8.

¶ 28. Medina relies on our statement in *Tkacz* that the substantial relationship standard applies when we analyze a disqualification motion brought "prior to trial." *Id.*, ¶ 15. We used the phrase "prior to trial" to distinguish the facts before us in *Tkacz* from those in *Love*, where the motion claiming a conflict of interest was brought "after trial." *Tkacz*, 258 Wis. 2d 611, ¶¶ 10–11. Because in *Tkacz* there was no assertion that the disqualification motion was untimely, we simply described the disqualification motion as brought "before . . . trial," *id.*, ¶ 3, and did not further discuss the timing. Instead, because the circuit court in *Tkacz* denied the disqualification motion based on its decision that there was no substantial relationship, we reviewed that decision to determine whether the circuit court had properly exercised its discretion.[8] *Tkacz* does not answer the question presented here: when a disqualification motion based on the substantial relationship standard is denied on the ground of untimeliness, what

---

[8] Whether disqualification of an attorney is required in a particular case involves an exercise of the circuit court's discretion, and our review is limited accordingly. *Tkacz*, 258 Wis. 2d 611, ¶ 8; *Berg*, 141 Wis. 2d at 887.

standard applies to a postconviction motion claiming a prosecutor's conflict of interest because of prior representation?

¶ 29. Similar to *Tkacz*, *Love* uses the phrase "at trial," 227 Wis. 2d at 82, and *Kalk* uses the phrase "prior to or at trial," 234 Wis. 2d 98, ¶ 15, to distinguish the situation where a motion based on a claim of conflict of interest is brought for the first time after conviction. However, because in those two cases there was no prior motion at all, those phrases cannot be reasonably read as resolving the issue in this case. Nonetheless, the reasoning in *Love* for adopting the actual conflict of interest standard, which we followed in *Kalk*, is applicable here. Once a trial has occurred, the focus should be on "real deficiencies and real problems" rather than on "theoretical imperfections and potential problems." *Love*, 227 Wis. 2d at 82. Our reasoning in *Tkacz* for adopting the "substantial relationship" standard is also relevant here: the standard is aimed at potential conflicts of interest in order to ensure that an actual conflict of interest will not occur. *Tkacz*, 258 Wis. 2d 611, ¶ 15.

¶ 30. We conclude that where, as in this case, a disqualification motion against a prosecutor based on the substantial relationship standard is properly denied as untimely, the "actual conflict of interest" standard of *Love* and *Kalk* applies to a postconviction motion claiming a conflict of interest. In this situation the defendant had the opportunity to have the prosecutor disqualified based on the lower standard of a substantial relationship between the prior representation and the current case, but lost the opportunity because he or she did not make that claim in a timely manner. The trial then occurred. At the time of the postconviction motion, it makes little

474

sense to apply for the first time (because the circuit court earlier properly denied the motion based on untimeliness and so did not apply the substantial relationship standard) a standard that protects against potential conflicts of interest when we can now tell whether an actual conflict of interest occurred. If there was no actual conflict of interest, then the potential conflict did not impair the defendant's right to a fair trial and the institutional interests of the finality of judgment support application of the actual conflict of interest standard. *See Love*, 227 Wis. 2d at 82.

¶ 31. Accordingly, in order to be entitled to a new trial, Medina must show by clear and convincing evidence that the district attorney had an actual conflict of interest, that is, that the district attorney had a competing loyalty that adversely affected Medina's interests. *Kalk*, 234 Wis. 2d 98, ¶ 16.[9] The circuit court therefore did not err in not applying the substantial relationship standard.

¶ 32. We now turn to a review of the circuit court's decision denying Medina's postconviction motion, and we apply the actual conflict of interest standard we

---

[9] As we noted in footnote 5, in *Kalk* we did not refer to the alternative ground for an actual conflict of interest identified in *Love*: defense counsel's knowing failure to disclose to the defendant or the court before trial that counsel previously prosecuted the defendant. *Love*, 227 Wis. 2d at 82. Whether that is a ground for a new trial even if there is no adverse affect on the defendant's interests, when the conflict of interest claim is asserted against the prosecutor rather than defense counsel, is an issue we need not decide in this case. If we assume without deciding that this alternative ground does apply in this case, it does not change the outcome: there is no dispute here that the district attorney did not remember the prior representation until defense counsel brought it to his attention.

have identified in the preceding paragraph. In our review we accept the circuit court's findings of fact unless they are clearly erroneous, and we review de novo the legal issue of whether an actual conflict exists based on those facts. *Kalk*, 234 Wis. 2d 98, ¶ 13.

¶ 33. The circuit court here accepted the district attorney's testimony that he did not remember any conversation with Medina during the prior representation. It also found that the district attorney did not refer to any information at sentencing from the prior representation that was not a matter of public record. There is no basis for disturbing these findings. Medina points to no other evidence that might arguably show his interests were adversely affected because the district attorney, having previously represented him at sentencing in the misdemeanor theft case in 2001, is now prosecuting him for these different charges of burglary. We conclude Medina has failed to show by clear and convincing evidence that the district attorney had a competing loyalty that adversely affected Medina's interests in this case. The circuit court therefore correctly denied his motion for a new trial.

¶ 34. Although we have resolved the issues on this appeal without the need to address the parties' dispute over the correct meaning of "substantial relationship" in *Tkacz*, we take up that topic now in order to clarify the language that is the subject of their dispute. Medina relies on our statement in *Tkacz* that two representations are substantially related " 'if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second.' " 258 Wis. 2d 611, ¶ 13 (citing *Berg*, 141 Wis. 2d at 886). This means, Medina argues, that in order to meet the substantial relationship standard, a party need not

476

show that the lawyer actually obtained relevant confidential information in the prior case or that the lawyer did or might use any such information.

¶ 35. The State, on the other hand, focuses on our analysis of the circuit court's ruling in *Tkacz*:[10]

> The trial court concluded that during [the prosecutor's] limited representation of Tkacz no significant meetings took place, the two did not exchange any meaningful confidential information, and [the prosecutor] received no information from Tkacz concerning any drug connections. The court also accepted [the prosecutor's] account that the reference he made to Arkansas during the bail hearing was based upon

---

[10] The relevant facts in *Tkacz* are as follows. Tkacz was convicted by a jury of first-degree reckless homicide and conspiracy to deliver heroin as a repeater. *Tkacz*, 258 Wis. 2d 611, ¶ 2. The homicide conviction was reversed on appeal. *Id.* Before the new trial on that charge, Tkacz moved to disqualify the prosecutor, asserting that the prosecutor had represented him in a civil forfeiture matter six years before the criminal complaint was filed. *Id.*, ¶ 3. Tkacz testified at the motion hearing that, when the prosecutor was representing him, he disclosed to the prosecutor confidential information concerning drug connections he had in Texas and Arkansas. *Id.* Tkacz contended that the prosecutor had used this information at the bail hearing before the first trial, when the prosecutor had argued that Tkacz was a flight risk because he "has on occasion had a prior address in Arkansas . . . . [and] ha[s] been known to travel . . . ." *Id.* The prosecutor testified that he did not remember discussing the specifics of the prior case with Tkacz, did not remember Tkacz giving him any confidential information, and most likely had some phone contact and minimal face-to-face contact with Tkacz during the prior representation. *Id.*, ¶ 4. The prosecutor also testified that before the bail hearing, he discussed Tkacz's out-of-state contacts with police officers and they gave him the information about Tkacz's Arkansas contacts. *Id.*

information the police had provided him and that any information he may have had about Tkacz's connection to Texas and Arkansas was already independently known to the police. Finally, the court concluded that "[n]othing that [the prosecutor] did learn or could have learned back in 1989 had a substantial relationship to the charges in this case."

*Tkacz*, 258 Wis. 2d 611, ¶ 17.

¶ 36. We then concluded that, based on these findings, "the trial court's determination that no substantial relationship existed was firmly grounded in a reasonable basis, and furthermore, the court's legal conclusion that no conflict of interest existed was correct." *Id.* In the State's view, because our summary of the court's findings included findings that no confidential information was communicated, this is part of the substantial relationship standard.

¶ 37. While we see why there may be some confusion based on our summary in *Tkacz* of the circuit court's findings, those findings do not define the substantial relationship standard. Medina is correct that under this standard a substantial relationship may exist even if there is no evidence that confidential information relevant to the later case was communicated to the attorney. We clearly say this in *Tkacz* when we state that the standard is whether " 'the lawyer *could have* obtained [relevant] confidential information.' " *Id.*, ¶ 13 (citation omitted, emphasis added). And our more thorough discussion of the standard in *Berg* makes this even clearer: the point of the substantial relationship standard is to prevent the need for an attorney's former client to have to disclose confidential information in order to have the attorney disqualified from representing an adverse party in the present

478

case. *See Berg*, 141 Wis. 2d at 889–91 and n.5. That is why the existence of a substantial relationship depends on whether "the factual contexts of the two representations are similar or related." *Id.* at 889 (citations omitted). By comparing the factual contexts of the two cases, we can determine whether there *could have been* confidential disclosures in the former case that are relevant to the later, without inquiring into the actual disclosures.

## CONCLUSION

¶ 38. The circuit court may, in the proper exercise of its discretion, deny a motion to disqualify a prosecutor under the "substantial relationship" standard on the ground that the motion was untimely. The circuit court here properly exercised its discretion in denying Medina's motion, brought on the morning of jury selection, on the ground that it was untimely. Because the circuit court correctly denied the motion, when Medina moved after sentencing for a new trial on the ground that the district attorney had a conflict of interest because he previously represented Medina in another criminal case, Medina had to show by clear and convincing evidence that the district attorney had a competing loyalty that adversely affected Medina's interests. Based on the facts found by the circuit court, we conclude as a matter of law that Medina did not establish an adverse affect on his interests. Accordingly, the circuit court correctly concluded Medina was not entitled to a new trial.

*By the Court.*—Judgment and order affirmed.

¶ 39. LUNDSTEN, P.J. (*concurring*). I join all parts of the majority opinion. Nonetheless, I write

separately because, in my view, we should have affirmed Medina's conviction without deciding whether the circuit court properly exercised its discretion in denying Medina's pretrial motion to remove the prosecutor.

¶ 40. As lucidly explained by the majority, the purpose of a pretrial determination of the need to remove an attorney is to identify and eliminate the risk that a possible conflict of interest will actually affect a proceeding such as a trial. At the pretrial stage in the proceedings, it makes sense to eliminate this risk using the defendant-friendly standard we applied in *State v. Tkacz*, 2002 WI App 281, 258 Wis. 2d 611, 654 N.W.2d 37, and *Berg v. Marine Trust Co.*, 141 Wis. 2d 878, 416 N.W.2d 643 (Ct. App. 1987). But, as the majority also explains, because the equities are different, after trial we apply a different standard. When we assess a claimed conflict of interest after trial, we look to see if the alleged conflict had an actual effect on the trial. For the reasons below, I conclude that when a defendant is convicted after a fair and error-free trial, it makes no sense to reverse and order a new trial, regardless whether the circuit court properly denied a defendant's pretrial motion to remove an attorney because of a potential conflict.[1]

¶ 41. The majority cogently describes the pretrial "substantial relationship" standard as follows: "[I]t is irrelevant if the attorney actually obtained confidential information in the first representation or used it against the former client because 'substantially related'

---

[1] I point out that the majority does not address the topic of my concurrence because the State did not brief the issue and, of course, neither did Medina. I readily admit that we should generally avoid deciding cases based on theories not argued by the parties. Still, it is not uncommon for us to do so, and I see no reason why we should not in this case.

means that the attorney 'could have obtained confidential information in the first representation that would have been relevant in the second.'" Majority, ¶ 17 (quoting *Berg*, 141 Wis. 2d at 886). The majority further explains: "In essence, the application of the substantial relationship standard . . . insures that 'the ensuing criminal [or civil] trial will avoid any potential impropriety' and provides 'the opportunity to head off the conflict before it actually happens.'" Majority, ¶ 17 (quoting *Tkacz*, 258 Wis. 2d 611, ¶ 15).

¶ 42. The majority then contrasts the pretrial standard with the post-trial standard: "[A] different analysis applies when a criminal defendant claims for the first time in a postconviction motion that either the prosecutor or the defense counsel had a conflict of interest because of prior representation." Majority, ¶ 19. The post-trial standard is different, the majority explains, because of the reasons set forth in *State v. Love*, 227 Wis. 2d 60, 594 N.W.2d 806 (1999):

> In a post-conviction motion, the institutional factors are different. If a defendant has received a fair trial, the court has an institutional interest in protecting the finality of its judgment. Moreover, theoretical imperfections and potential problems ought not be treated more seriously than real deficiencies and real problems, for such skewed values would undermine public confidence in the administration of justice.

*Id.* at 82.

¶ 43. As I see it, the rationale for the *Love* post-trial standard applies regardless of the propriety of a pretrial ruling denying a removal motion. I liken this situation to the rule we apply when an error-free trial follows an erroneous bindover decision. In *State v. Webb*, 160 Wis. 2d 622, 467 N.W.2d 108 (1991), the court held: "[A] conviction resulting from a fair and error-

less trial in effect cures any error at the preliminary hearing . . . [and] a defendant who claims error occurred at his preliminary hearing may only obtain relief before trial" by seeking leave to appeal the bindover decision. *Id.* at 628. The *Webb* court reasoned that, after an error-free trial, reversing a conviction and returning the parties to the preliminary hearing stage serves no sensible purpose. *Id.* at 628–31.

¶ 44. Requiring a showing of probable cause at a preliminary hearing serves to prevent defendants from enduring needless trials and avoids the accompanying waste of judicial resources. If the State is unable to present probable cause, what reason is there to think it can prove guilt beyond a reasonable doubt? Thus, a preliminary hearing serves the same sort of preventive function as the pretrial *Tkacz/Berg* "substantial relationship" standard, namely, the avoidance of trials that might not or cannot produce proper convictions. And, in both situations, reversing a conviction after a fair and error-free trial defies common sense.

¶ 45. Common sense tells me that the rule I would apply to Medina is not prone to abuse. I see no reason why circuit courts cannot be trusted to liberally grant timely and meritorious removal motions under the *Tkacz/Berg* "substantial relationship" standard. The standard is intentionally geared to err on the side of safety, requiring removal of attorneys even when the possibility of a real problem is remote, to say the least. And judges have a strong incentive to faithfully apply the rule because granting a timely removal motion has little or no effect on the court, and it avoids the possibility of reversal and the need for a new trial.

¶ 46. I acknowledge that there are differences between the *Webb* situation and the conflict of interest issue we address today. If I were writing a majority

opinion, I would explain why these differences do not undercut my reliance on *Webb*. I note also that, if anything, the rule I would apply here is less susceptible to abuse than the *Webb* preliminary hearing rule. Again, if I were writing a majority opinion, I would explain why I believe this to be true.

¶ 47. Accordingly, I join all parts of the majority decision. I would, however, decline to decide whether the circuit court properly denied Medina's removal motion, and would affirm on the basis that Medina is not entitled to reversal under the post-trial *Love* standard.