STATE of Wisconsin, Plaintiff-Respondent,

v.

Peter G. TKACZ, Defendant-Appellant.†

Court of Appeals

*No. 02–0192–CR. Submitted on briefs August 21, 2002.—Decided October 16, 2002.*

## 2002 WI App 281

(Also reported in 654 N.W.2d 37.)

† Petition to review denied 1-14-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark S. Rosen* of *Rosen and Holzman* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gregory M. Weber*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. In this case, the prosecuting attorney previously represented Peter G. Tkacz in a civil forfeiture action before joining the district attorney's office. Tkacz sought to remove the prosecutor prior to trial claiming a conflict of interest. As did the trial court, we adopt the "substantial relationship" test when the issue is raised pretrial during criminal cases. Because the prior civil action and this criminal action were not substantially related, we affirm the trial court's denial of Tkacz's motion. We also address and reject Tkacz's two other issues: that Tkacz's trial counsel was ineffective for failing to impeach one of the State's witnesses with regard to the exact number of her prior criminal convictions and that the prosecutor's plea offer after reversal and remand which was less favorable than the plea offer before the first trial constitutes vindictive prosecution.

¶ 2. In April 1995, Tkacz was charged with one count of conspiracy to deliver heroin as a repeater and one count of first-degree reckless homicide for participating in a death by providing the victim with heroin. Prior to the first trial, prosecutor Douglass Jones of-

fered Tkacz a plea bargain recommending a sentence of ten to fifteen years. Tkacz did not accept the plea offer. The case went to trial and a jury convicted Tkacz on both counts. Tkacz received a twenty-year prison sentence on the first-degree reckless homicide charge. Tkacz appealed and we reversed the first-degree reckless homicide conviction. *State v. Tkacz*, No. 97–0974, unpublished slip op. (Wis. Ct. App. June 3, 1998).

¶ 3. Prior to the second jury trial on the first-degree reckless homicide charge, Jones offered Tkacz a plea bargain recommending the twenty-year maximum sentence, which Tkacz did not accept. Also, before his second trial, Tkacz filed a motion seeking to disqualify Jones alleging an impermissible conflict of interest. While he was in private practice, Jones had represented Tkacz in a civil forfeiture matter in 1989. Tkacz testified at the pretrial motion hearing that during Jones's representation of him, he had a meeting with Jones that lasted one to two hours during which he disclosed confidential information to him concerning drug connections he had in Texas and Arkansas. In his motion, Tkacz claimed that Jones used this information at the bail hearing before his first trial to argue for substantial cash bail. At the bail hearing, Jones had argued:

> I can inform the Court, in terms of risk of flight, Mr. Tkacz has on occasion had a prior address in Arkansas. He had been known to travel . . . . At this point in time, I think the risk of flight and the danger he presents to the community, and the seriousness of these charges, which carries 60 years worth of exposure, make Mr. Tkacz a good candidate for significant cash bail.

¶ 4. Jones testified at the motion hearing that he did not have any knowledge of Tkacz ever giving him any confidential information, he did not recollect having discussed the specifics of the case with Tkacz most

likely because the need never arose, and he probably had some phone contact and minimal face-to-face contact with Tkacz. Jones also testified that prior to the bail hearing he had discussions with the police about Tkacz's out-of-state contacts and that they supplied him with information about Tkacz's connections with Arkansas. The trial court denied the motion and the case proceeded to trial.

¶ 5. At trial, Jill Wolff, who was present at the time of the homicide, testified as a witness for the State. She testified that she and Tkacz lived together at the time of the homicide and they shared drugs. She testified that at the time of the homicide, she was addicted to various narcotics and heroin and had done heroin that night. She testified that she and Tkacz knew the victim and had given her injections of heroin in the past.

¶ 6. Wolff further testified that she was in prison for her involvement in the death of the victim and that in exchange for her cooperation with the State, she received a favorable parole recommendation. On cross-examination, Wolff admitted that she had not told the truth about the circumstances surrounding the victim's death during a John Doe proceeding and in her statements to police. She also testified that she had tried to set up an alibi for herself, "I was trying to set up a lie at that time to cover up for the truth." Wolff had seven prior criminal convictions, two of which were the result of the homicide. Tkacz's counsel was aware of these convictions, but on cross-examination did not elicit from Wolff the number of her prior convictions.

¶ 7. After a three-day jury trial, the jury convicted Tkacz and the trial court sentenced him to twenty years in prison. Tkacz filed a motion for postconviction relief

raising the three issues we address here. The trial court denied the motion and Tkacz appeals.

¶ 8. We first address Tkacz's claim that the trial court erred when it failed to disqualify Jones based on the alleged conflict of interest. Tkacz asserts that the trial court erred by using the "substantial relationship" test to determine the issue. Whether the trial court used the proper standard is a question of law that we review independently of the trial court. *See Lane v. Sharp Packaging Sys., Inc.*, 2002 WI 28, ¶ 19, 251 Wis. 2d 68, 640 N.W.2d 788. However, the trial court's decision of whether attorney disqualification is required in a particular case is an exercise of discretion and the scope of our review is limited accordingly. *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991). Generally, we will not find that the trial court's exercise of discretion was erroneous if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the trial court's decision. *Jesse v. Danforth*, 169 Wis. 2d 229, 245–46, 485 N.W.2d 63 (1992).

¶ 9. Our review of the trial court's decision requires us to address two questions. First, we must decide what the proper standard is for determining whether a conflict of interest exists when a prosecuting attorney has previously represented a defendant in a different case and the criminal defendant raises the conflict of interest issue prior to trial. Second, once we set forth the appropriate standard, we must then apply it to the facts of this case to determine whether the trial court erroneously exercised its discretion when it found that a conflict of interest did not exist.

¶ 10. There are no reported Wisconsin decisions setting the appropriate standard for analyzing conflict

of interest claims where a criminal defendant raises the conflict of interest issue before trial. We begin our analysis with a discussion of recent cases that have dealt with conflict of interest problems in both the civil and criminal contexts.

¶ 11. In *State v. Love*, 227 Wis. 2d 60, 82, 594 N.W.2d 806 (1999), our supreme court set the standard for analyzing ineffective assistance of counsel claims based on an attorney's potential conflict of interest where the defendant raises the objection after trial. *Love* involved an assistant district attorney who had represented the State at the defendant's sentencing hearing and then a few months later represented the defendant in the same case at another sentencing hearing after revocation of his probation. *Id.* at 64–65. In concluding that no prohibited conflict existed, the court held that in a serial representation case where the defendant does not raise the objection until after trial, the defendant must show by clear and convincing evidence that the attorney had an actual conflict of interest. *Id.* at 82.

¶ 12. The court distinguished the case from a situation where the defendant raises the conflict of interest objection prior to trial: "[t]he standards to be applied in the *Kaye*[1] hearing dealing with a potential or actual conflict of interest before trial, are different from the standards applied in a motion for relief after trial,

---

[1] In *State v. Kaye*, 106 Wis. 2d 1, 315 N.W.2d 337 (1982), our supreme court directed the trial courts to address at the arraignment any potential conflict of interest issue presented by an attorney's dual representation of codefendants. *Id.* at 14. The court issued the directive "[t]o avoid such problems in the future." *Id. State v. Kalk*, 2000 WI App 62, ¶¶ 9–10, 234 Wis. 2d 98, 608 N.W.2d 428, reaffirmed this directive for cases involving serial representation.

because both the defendant and the court should be given the opportunity before trial to head off an actual conflict of interest before it happens." *Love*, 227 Wis. 2d at 73. Although the court made it clear that the "actual prejudice" standard would not apply if the defendant raised the issue before trial, the court did not specify what the standard would be in such a case.

■■

¶ 13. In *Berg v. Marine Trust Co.*, 141 Wis. 2d 878, 884–85, 416 N.W.2d 643 (Ct. App. 1987), the leading Wisconsin case dealing with the conflict of interest issue in the civil context, we adopted the "substantial relationship" test as the appropriate standard for analyzing conflict of interest claims. We set forth the substantial relationship test as follows: "where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are 'substantially related.'" *Id.* at 885 (citation omitted). The two representations are substantially related "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." *Id.* at 886 (citation omitted). We reasoned that the test was appropriate, in part, because it was consistent with Wisconsin's professional responsibility rules governing an attorney's representation of a former client. *Id.* at 886.

¶ 14. While this court has not previously been faced with a serial representation claim where the defendant objects before trial, other courts have addressed the issue and, relying on their own professional responsibility rules, have concluded that the substantial relationship test should apply to such cases. *See State v. Tippecanoe County Court*, 432 N.E.2d 1377,

1378–79 (Ind. 1982) (applying the substantial relationship test to disqualify an elected prosecuting attorney and an entire staff of deputy prosecutors, where the prosecuting attorney, who had administrative control over the entire staff, had formerly represented the accused in two prior cases, and the accused was charged with theft and being a habitual offender); *State v. Barnett*, 965 P.2d 323, 327–28 (N.M. Ct. App. 1998) (applying the state's professional responsibility rules to guide the court's decision to disqualify a prosecuting attorney who had counseled the defendant's plea in a prior substantially related case).

¶ 15. This brings us to the case at hand. We hold that the "substantial relationship" test is the proper standard for analyzing whether a conflict of interest exists in a criminal serial representation case where the defendant raises the issue prior to trial. The decision in *Love* makes it clear that it is the fact that a defendant raises a conflict of interest objection after trial that triggers the application of the "actual prejudice" standard and, thus, that standard is inapplicable to our case. The "substantial relationship" test embodies Wisconsin's current rules of professional responsibility and its application will ensure that the ensuing criminal trial will avoid any potential impropriety.[2] Further, the test will present a lower standard for a defendant to

[2] Supreme Court Rule 20:1.9 reads, in part, as follows:

A lawyer who has formerly represented a client in a matter shall not:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation . . . .

meet than *Love*'s actual prejudice standard and thus will give the defendant who raises the conflict of interest issue before trial the opportunity to "head off the conflict before it actually happens."[3]

██

¶ 16. We now turn to the trial court's application of the "substantial relationship" test. Our review of the record persuades us that the trial court did not erroneously exercise its discretion when it concluded that Tkacz did not establish that a substantial relationship existed and therefore that there was no conflict of interest.

██

¶ 17. Tkacz alleges that a conflict of interest arose when Jones relied on information about Tkacz's drug connections in Texas and Arkansas that he had acquired during his 1989 representation of Tkacz to obtain a substantial cash bail. The trial court, however, made different findings of historical fact. We will uphold a trial court's findings of fact unless they are clearly erroneous; that is unless they are against the great weight and clear preponderance of the evidence. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575

---

[3] Tkacz cites *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), for the proposition that the potential for misconduct creates an impropriety that requires disqualification of the prosecutor in a situation like the one presented in this case. Tkacz misapplies *Young*. In *Young*, the Court held that counsel for a party that is the beneficiary of a court order entered in a civil lawsuit may not be appointed by the trial court to prosecute a criminal contempt based on an alleged violation of that order. *Id.* at 790. The Court did not address the question of serial representation in a criminal case nor did it reject the proposition that the "substantial relationship" test would apply in such a case.

(Ct. App. 1983). The trial court concluded that during Jones's limited representation of Tkacz no significant meetings took place, the two did not exchange any meaningful confidential information, and Jones received no information from Tkacz concerning any drug connections. The court also accepted Jones's account that the reference he made to Arkansas during the bail hearing was based upon information the police had provided him and that any information he may have had about Tkacz's connections to Texas and Arkansas was already independently known to the police. Finally, the court concluded that "[n]othing that Jones did learn or could have learned back in 1989 had a substantial relationship to the charges in this case." We see no reason to disturb these findings. Based upon the court's findings of historical fact, we conclude that the trial court's determination that no substantial relationship existed was firmly grounded in a reasonable basis, and furthermore, the court's legal conclusion that no conflict of interest existed was correct.

¶ 18. We now turn to Tkacz's second claim that his trial counsel was ineffective for failing to impeach the State's key witness, Wolff, with the number of her prior criminal convictions. The issue of whether a person has been deprived of the constitutional right to the effective assistance of counsel presents a mixed question of law and fact. *State v. Trawitzki*, 2001 WI 77, ¶ 19, 244 Wis. 2d 523, 628 N.W.2d 801. We will uphold the trial court's findings of fact unless they are clearly erroneous. *Id.* We review whether defense counsel's performance was deficient and prejudicial de novo. *Id.*

¶ 19. To prevail on a claim of ineffective assistance of counsel a defendant must establish both that

626

the trial counsel's performance was deficient and that this performance prejudiced his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[4] To make this showing, the defendant must prove that a reasonable possibility exists that but for defense counsel's unprofessional errors, the result of the proceeding would have been different. *Trawitzki*, 2001 WI 77 at ¶ 40. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citations omitted). If the defendant fails to establish prejudice, we may dispense with the inquiry into whether counsel's performance was deficient. *Id.*

¶ 20. The facts in our case resemble the facts in *Trawitzki* and we begin our analysis of Tkacz's ineffective assistance of counsel claim with a brief discussion of that case. Trawitzki claimed that his trial counsel was ineffective for failing to impeach three of the State's witnesses with the specific number of prior convictions for each witness. *Id.* at ¶ 1. Trawitzki contended that the State's case against him rested primarily on the testimony of the three witnesses and that with the information about their convictions before it, the jury could have reasonably doubted the credibility of the witnesses and, consequently, Trawitzki's guilt. *Id.* at ¶ 42.

¶ 21. Our supreme court concluded that Trawitzki's counsel's failure to impeach had not prejudiced Trawitzki's defense. *Id.* at ¶ 46. According to the court, although the exact number of convictions might

---

[4] Tkacz argues that the burden of proving prejudice is on the State. However, as the State correctly points out, in ineffective assistance of counsel claims, the burden of proving prejudice is on the defendant. *Strickland v. Washington,* 466 U.S. 668, 688 (1984); *see also State v. Dyess*, 124 Wis. 2d 525, 544 n.11, 370 N.W.2d 222 (1985).

have incrementally weakened the credibility of the witnesses in the minds of the jurors, the decrease would not have been sufficient to establish a reasonable probability that the jury would have reached a different conclusion. *Id.* at ¶ 44. The court reasoned that the jury already had reason to question the credibility of the witnesses because all three testified that they were incarcerated for their roles in the events that led to the charges against Trawitzki and all three witnesses testified while wearing jail or prison clothes. *Id.*

 ·

¶ 22. As in *Trawitzki*, the jury in our case already had reason to question Wolff's credibility. The jury was aware that Wolff was in prison at the time of Tkacz's trial for her own involvement in the homicide and that she had received a favorable parole recommendation from the State in exchange for her testimony. The jury knew about her chronic use of heroin and other narcotics before and at the time of the homicide. The jury knew that Wolff had previously lied about the circumstances surrounding the homicide in the statements she made in a John Doe proceeding and in her statements to police and that she had tried to set up an alibi. Thus, the jury had before it a convicted felon, admitted perjurer and habitual drug user. The jury had an ample basis to discredit Wolff's testimony and it is unlikely that the exact number of convictions would have materially influenced the jury's credibility assessment.

¶ 23. Tkacz's attempts to distinguish *Trawitzki* fail. Tkacz contends that the supreme court reached the conclusion it did because most of the prior criminal convictions of the witnesses related to the incidents underlying Trawitzki's conviction and thus the additional convictions would essentially have been de minimus and cumulative. Tkacz points out that the evidence

adduced at the postconviction hearing in *Trawitzki* indicated that one witness had three convictions all relating to the underlying crime; another witness had eight convictions, five of which related to the underlying crime; and the third witness had fourteen convictions, twelve of which apparently arose out of the underlying crime. *See State v. Trawitzki,* 2000 WI App 205, ¶ 21 n.3, 238 Wis. 2d 795, 618 N.W.2d 884, *aff'd,* 2001 WI 77, 244 Wis. 2d 523, 628 N.W.2d 801. Tkacz argues that because Wolff had seven prior criminal convictions, including the two convictions for the underlying conduct the jury knew about, the cases are distinguishable.

¶ 24. We reject his argument. Nowhere in *Trawitzki* is there even a hint that the supreme court would have held differently if the prior convictions of the three State's witnesses in that case had been unrelated to the underlying crime. *Trawitzki* was not about numbers or how the numbers came to be that way; it was about whether the jury had an adequate basis to question the credibility of the witnesses such that a failure to impeach with the exact number of convictions would likely not have affected the outcome of the case. *See Trawitzki,* 2001 WI 77 at ¶ 44. While we do recognize that the number of convictions a witness has is relevant to the jury's assessment of a witness's credibility, we are not convinced that the result of Tkacz's trial would have been different had the jury known the exact number of Wolff's convictions. Our confidence in the outcome of the trial is not undermined by Tkacz's counsel's failure to impeach Wolff with her additional convictions.

¶ 25. Based upon the supreme court's decision in *Trawitzki,* we conclude that Tkacz has not satisfied his

burden to prove that his trial counsel's failure to fully impeach Wolff prejudiced his defense. Because we conclude that Tkacz's defense was not prejudiced, we dispense with the inquiry as to whether this failure amounts to deficient performance.[5]

¶ 26. We now turn to Tkacz's final claim that he was the victim of vindictive prosecution because Jones refused to reoffer a plea bargain recommending a ten- to fifteen-year prison term after Tkacz's successful appeal and instead offered a plea bargain recommending the maximum twenty-year sentence Tkacz received after the first trial. The legal principles surrounding prosecutorial vindictiveness claims present questions of law that we review de novo. *State v. Johnson*, 2000 WI 12, ¶ 18, 232 Wis. 2d 679, 605 N.W.2d 846. We review the trial court's findings of fact regarding whether the defendant established actual vindictiveness under the clearly erroneous standard. *Id.*

¶ 27. The State appears to argue for a per se rule that vindictive prosecution jurisprudence does not apply to the plea bargaining process. While we do recognize that a defendant does not have a constitutional right to a plea bargain, *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977), when a prosecutor chooses to engage in plea bargaining certain constitutional rights do come to

---

[5] Although we do not address this inquiry in depth, we do note that the attorney's failure to impeach Wolff did not render his performance deficient for the same reasons that we conclude this failure was not prejudicial to Tkacz's defense. It would have been reasonable for Tkacz's trial counsel to conclude that in light of what the jury already knew about Wolff, the additional evidence of Wolff's convictions would have been cumulative and unnecessary to further undermine her credibility with the jury.

the fore and thus circumstances do exist in which vindictive prosecution would apply. *See Turner v. Tennessee*, 940 F.2d 1000, 1001–02 (6th Cir. 1991) (holding that a presumption of vindictiveness arose where the defendant's attorney was deemed ineffective for failing to recommend that the defendant accept the prosecutor's plea bargain prior to the first trial and the prosecutor offered a much less favorable plea bargain before the defendant's retrial). Whether a per se rule, as championed by the State, is to be adopted would mark an important trend in the criminal law that should be decided by our supreme court. For our purposes, we can decide the issue in this case definitively even if we assume, without deciding, that the law of vindictive prosecution applies to less favorable plea offers made after an original conviction is reversed and remanded for a new trial.

¶ 28. In order to determine whether a prosecutor's decision to decline to reoffer a plea bargain after a defendant's successful appeal constitutes prosecutorial vindictiveness in violation of the defendant's due process rights, we must first decide whether a realistic likelihood of vindictiveness exists; if it does, then a rebuttable presumption of prosecutorial vindictiveness applies. *Johnson*, 2000 WI 12 at ¶ 17. The defendant bears the burden of establishing that under the circumstances of his or her case a realistic likelihood of vindictiveness exists. *See id.* at ¶ 33. If we conclude that the rebuttable presumption does not apply, then we must determine whether the defendant has demonstrated a claim of actual prosecutorial vindictiveness. *Id.* at ¶ 17.

¶ 29. The United States Supreme Court has set forth a prophylactic rule that the presumption of vindictiveness arises when a prosecutor files more serious charges against a defendant after the defendant appeals a conviction and wins a new trial. *Id.* at ¶ 32. A realistic likelihood of vindictiveness exists in such a case because the prosecutor has the ability to discourage appeals by "upping the ante" against the defendant with a more serious charge. *See Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974). This rule recognizes the basic principle that it is a violation of due process when the State retaliates against a person "for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). The Court has observed, however, that it would clearly be a different case if the State had established that the new charge was based on new events and could not have been brought in the original proceeding. *See Blackledge*, 417 U.S. at 29 n.7.

¶ 30. Even if the law is to be that a prosecutor's refusal to re-extend a plea offer can in appropriate circumstances give rise to a presumption of vindictiveness, this is not one of those circumstances. Tkacz does not argue that the prosecutor added new charges or sought a higher sentence than he received at the first trial in retaliation for his attacking his conviction, nor does he allege that any other constitutional rights were violated during the plea negotiations. Tkacz knowingly rejected or did not pursue the original plea bargain. Further, the trial court found that Jones offered a less favorable plea bargain prior to the second trial because he had additional evidence and a stronger case than he had going into the first trial. The presumption of

vindictiveness is limited to cases in which a realistic likelihood of vindictiveness exists; "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Goodwin*, 457 U.S. at 384. We therefore hold that Tkacz did not establish a realistic likelihood of vindictiveness in this case and that a presumption of vindictiveness does not apply.

¶ 31. In order to establish actual vindictiveness, "there must be objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Johnson*, 2000 WI 12 at ¶ 47 (citation omitted). The trial court determined that Jones provided objective reasons for his decision to decline to reextend the original plea bargain, none of which suggested that Jones acted in order to punish Tkacz for exercising his right to appeal. At the postconviction motion hearing, Jones testified that he had a witness who had heard Tkacz make a jailhouse confession after the first trial and, Wolff, Tkacz's codefendant at the first trial, had agreed to testify against him. Additionally, Jones stated that he believed that Tkacz's involvement in another drug overdose death in Milwaukee would support his argument for the maximum twenty-year sentence. Based upon these facts, the trial court reasonably determined that Jones simply had a stronger case going into the second trial and that this is what motivated him to offer the less favorable plea bargain.

¶ 32. We are not persuaded by Tkacz's arguments that Jones's refusal to re-extend the original plea offer was actually motivated by a desire to retaliate against Tkacz for appealing his conviction. Tkacz cites no authority for his argument that the concessions Jones made to the witnesses who testified against him constitute vindictive prosecution nor does he offer any objec-

tive evidence to support his contention that Jones's prior representation of him affected Jones's decisions during plea negotiations. We agree with the trial court that Jones's conduct does not suggest actual vindictiveness. We therefore conclude the trial court's determination concerning Tkacz's failure to produce objective evidence establishing actual vindictiveness was not clearly erroneous.

*By the Court.*—Judgment and order affirmed.