PER CURIAM.
¶1 Jesse Jermale Robinson appeals a judgment of conviction and an order denying postconviction relief. Following a bench trial, the circuit court found him guilty of one count of strangulation and suffocation, one count of battery, and two counts of disorderly conduct, all as acts of domestic abuse. Further, the circuit court found that Robinson committed the offenses as a domestic abuse repeater and a habitual offender. In postconviction proceedings, the circuit court denied Robinson's motion to vacate the judgment of conviction. On appeal, Robinson raises a single issue: whether his trial counsel was ineffective for failing to impeach the victim with pretrial statements that, according to Robinson, were inconsistent with the victim's trial testimony. We reject his arguments and affirm.
Background
¶2 In February 2017, F.P. reported to Milwaukee Police Officer Michael Dukat that she had obtained a restraining order against Robinson because he had physically abused her during the period that they were dating. First, F.P. told Dukat that on November 27, 2016, she was at Robinson's home in Milwaukee, Wisconsin, when Robinson became enraged while questioning her about a former boyfriend. She alleged that Robinson grabbed her by the throat, pinned her head to the wall, then swung her into the middle of the bed and put his hand on her neck, causing her pain. Second, F.P. told Dukat that on January 18, 2017, she and Robinson were "play fighting," and Robinson again asked about her former boyfriend. F.P. said that Robinson then put his hand over her mouth and kept it there, preventing her from breathing and causing her to gasp for air. A police investigation revealed that Robinson had multiple prior criminal convictions, some involving domestic abuse. The State filed a criminal complaint charging Robinson as a domestic abuse repeater and a habitual offender with one count of strangulation and suffocation, one count of battery, and two counts of disorderly conduct, all as acts of domestic abuse.
¶3 Robinson demanded a trial. He waived his right to a jury and the matter was tried to the court.
¶4 At trial, F.P. testified that she dated Robinson from late September 2016 through mid-January 2017, and that she lived in his home for most of that time. She said that on November 27, 2016, she and Robinson were talking about her prior romantic relationship when he became angry. She said that he choked her, then threw her into the middle of the bed and choked her again. The incident ended, she said, after she assured him that she was not going to make a telephone call or tell anybody about what happened.
¶5 F.P. further testified that on January 18, 2017, she and Robinson were having a conversation. She said she could not recall the topic, but Robinson again became angry and put his hand over her mouth. She said he then "repeated the same gesture. Put his hand over [her] mouth, but held it a little longer, because this time [she] had to gasp for air." Following this testimony, the prosecutor said: "So, I saw you gesturing. You had your hand over your nose and mouth or just your mouth?" F.P. answered: "Both. He has pretty big hands, so both hands on mouth and nose." In response to further questioning from the State, F.P. confirmed that Robinson twice put his hand over her mouth and nose and that she feared she would suffocate if she struggled. She said that she "didn't know if he was going to release his hands," and she thought she was "actually going to die."
¶6 Robinson, by trial counsel, then conducted a substantial cross-examination. During the course of that cross-examination, F.P. said she did not remember the substance of the argument on January 18, 2017, and she denied that the argument involved her former boyfriend. She denied that she and Robinson were "play fighting" on that date, denied making such a statement to Dukat, and denied any recollection of making such a statement. She acknowledged that she did not go to the police, or to a doctor's office, or to her parents' home after the November 27, 2016 incident, and she acknowledged that she took no defensive action during the January 18, 2017 incident.
¶7 Dukat testified as the State's second and final witness and described receiving F.P.'s report about Robinson's violent conduct. On cross-examination, he confirmed that F.P. reported both that she was "play fighting" with Robinson on January 18, 2017, and that she argued with Robinson that day about her former boyfriend.
¶8 Robinson testified on his own behalf. He said that he had no contact with F.P. on November 27, 2016, and that his interactions with F.P. on January 18, 2017, were unremarkable. On cross-examination, he testified that from the day he met F.P. in June 2016, until their relationship ended in February 2017, they never had an argument and he never raised his voice to her. He concluded his testimony with an admission that he had six prior criminal convictions.
¶9 At the close of the evidence, the circuit court observed that the case involved one witness, F.P., who "gives detail about an event," and a second witness, Robinson, who "says [that] didn't happen." The circuit court found that Robinson's six prior criminal convictions adversely affected his credibility, and that F.P.'s testimony was "very clear and did not have any holes in it, other than the one issue about [ ] not remembering exactly what their fight or argument was about before it turned violent." In light of the totality of the evidence, the circuit court determined that F.P. was more credible than Robinson and found him guilty as charged.
¶10 Robinson filed a postconviction motion alleging, as relevant here, that his trial counsel was ineffective for failing to impeach F.P. at trial with prior statements she made about the January 18, 2017 incident. His argument turned on F.P.'s trial testimony that Robinson impeded her breathing by covering both her nose and her mouth. He contended that his trial counsel should have cross-examined her regarding the portions of Dukat's report stating that Robinson put his hand over her mouth and the corresponding absence of any indication in the report that Robinson covered her nose. Similarly, he argued that his trial counsel should have cross-examined F.P. about her petition for a temporary restraining order, filed a few days before she spoke to Dukat, in which she wrote that Robinson "put his hand over [her] mouth trying to suffocate [her]."
¶11 The circuit court denied Robinson's postconviction motion without a hearing. The circuit court concluded that, assuming Robinson's trial counsel should have cross-examined F.P. about her prior statements, Robinson was not prejudiced by trial counsel's omissions. Robinson appeals.
Discussion
¶12 To prevail on a claim of ineffective assistance of counsel, a defendant must make a two-prong showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). To demonstrate deficient performance, the defendant must show that counsel's actions or omissions "fell below an objective standard of reasonableness." See id. at 688. In evaluating the alleged deficiency, a reviewing court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." See id. at 689. To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. at 694. Whether counsel's performance was deficient and whether the deficiency was prejudicial are questions of law that we review de novo . See State v. Johnson , 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990). If a defendant fails to satisfy one component of the analysis, a reviewing court need not address the other. See Strickland , 466 U.S. at 697.
¶13 A person claiming ineffective assistance of counsel must seek to preserve counsel's testimony at an evidentiary hearing, see State v. Curtis , 218 Wis. 2d 550, 554-55, 582 N.W.2d 409 (Ct. App. 1998), but a person who makes such a claim is not automatically entitled to a hearing, see State v. Allen , 2004 WI 106, ¶¶13-14, 274 Wis. 2d 568, 682 N.W.2d 433. The circuit court must hold a hearing only if the motion contains allegations of material fact that, if true, would entitle the movant to relief. See Allen , 274 Wis. 2d 568, ¶13. Whether the allegations necessitate a hearing presents a question of law for our independent review. See id. , ¶9. If the movant is not entitled to a hearing-either because the movant does not make sufficient allegations that, if true, entitle him or her to relief, or the allegations are merely conclusory, or the record conclusively shows that the movant is not entitled to relief-the circuit court has discretion to deny a postconviction motion without a hearing. See id. We review a circuit court's discretionary decisions with deference. See id. With these principles in mind, we turn to Robinson's claim.
¶14 Robinson alleges that his trial counsel was ineffective for failing to impeach F.P. with her prior statements. According to Robinson, F.P.'s testimony that he covered her mouth and nose on January 18, 2017, contradicted her pretrial statements, made orally to Dukat and in writing when she petitioned for a restraining order, that he covered her mouth on that day. Robinson contends that his trial counsel performed deficiently by failing to confront F.P. with the alleged inconsistencies. Robinson further contends that he was prejudiced by trial counsel's failure because, he says, if trial counsel had cross-examined F.P. about the alleged inconsistencies, the cross-examination would have undermined F.P.'s credibility and "creat[ed] a possibility for doubt about whether F.P.'s breathing had in fact been impeded."
¶15 We reject Robinson's claim of deficient performance because the prior statements were not inconsistent with F.P.'s trial testimony. F.P. consistently maintained that Robinson impeded her breathing on January 18, 2017, by covering her mouth. Her trial testimony provided additional information about Robinson's actions, namely, that his hands were so large that they also covered her nose, but this information did not contradict or repudiate her earlier statements. Accordingly, trial counsel's decision not to question her about her earlier statements-and thus not to dwell on inflammatory details about Robinson's size and how he caused F.P. to suffer-was reasonable and fell well within the wide range of professionally competent choices.[1] See State v. Kimbrough , 2001 WI App 138, ¶31, 246 Wis. 2d 648, 630 N.W.2d 752 (explaining that we assess counsel's performance by determining whether it was "objectively reasonable according to prevailing professional norms").
¶16 Assuming for the sake of argument, however, that trial counsel performed deficiently by not cross-examining F.P. about her prior statements, the omission did not prejudice Robinson. First, as the circuit court explained in its postconviction order, F.P. testified that Robinson covered her mouth during the January 2017 incident, but "[t]he prosecutor noticed that [F.P.] was gesturing with her hand over her nose and mouth and asked [F.P.] if the defendant had his hand over her nose and mouth or just her mouth.... [S]he responded, 'both.' " F.P. then testified "several more times about her mouth and nose being covered." Thus, the circuit court was able to see for itself that F.P. said Robinson covered her mouth, and correspondingly, the circuit court could assess that statement in light of her demonstrative behavior in the courtroom and her clarifying testimony about what occurred.
¶17 Second, the trial proceedings revealed a variety of inconsistencies in F.P.'s narrative. As Robinson concedes, F.P. gave conflicting testimony on direct examination that Robinson: (1) covered her mouth twice, then that he covered her mouth only once; and (2) used only one hand to cover her mouth and nose, then that he used both hands to cover her mouth and nose. Further, during cross-examination F.P. categorically denied ever telling police that she and Robinson were "play fighting" at the outset of the January 2017 incident, and she explicitly testified that she did not know why they were fighting. Robinson went on to impeach that testimony through Dukat, who testified that F.P. told police she and Robinson were "play fighting" and that they argued about a specific subject, namely, her former boyfriend. Robinson also showed that, notwithstanding F.P.'s claims that Robinson was violent, F.P. did not immediately report either of the two allegedly violent incidents; she continued to live with Robinson after the first alleged incident; she did not seek medical attention at the time of either incident; and she did not ask her parents for help or go to their home even though she "feel[s] safe at her parents' house."
¶18 As the foregoing reflects, the circuit court had a substantial basis on which to assess F.P.'s testimony and truthfulness at trial. Under similar circumstances, where a trial fully allowed the fact finder to evaluate credibility, we have concluded that our confidence in the outcome of the proceeding was not undermined by trial counsel's failure to test credibility in some additional way. See State v. Tkacz , 2002 WI App 281, ¶¶22-25, 258 Wis. 2d 611, 654 N.W.2d 37 (confidence in outcome of jury trial unshaken where trial counsel did not impeach witness with exact number of the witness's prior convictions because jury knew witness had prior convictions); see also State v. Arredondo , 2004 WI App 7, ¶33, 269 Wis. 2d 369, 674 N.W.2d 647 (no prejudice where trial counsel failed to impeach witness with false statement made to police because jury learned that witness lied to police).
¶19 Moreover, the postconviction proceeding afforded the circuit court an opportunity to review the evidence presented at trial in light of Robinson's allegation that F.P. made inconsistent pretrial statements. In addressing Robinson's claim for relief, the circuit court explicitly considered the information in Dukat's incident report reflecting that F.P. said Robinson covered her mouth. The circuit court observed that Dukat's incident report was not a verbatim transcription but merely the officer's memorialization of F.P.'s complaint, and the circuit court stated that it therefore would not have given much weight to an inconsistency between F.P.'s testimony and Dukat's report. Relatedly, the circuit court considered F.P.'s petition for a restraining order alleging that Robinson covered her mouth, and the circuit court indicated, as we have similarly opined, that F.P.'s written statement was shorter than, not inconsistent with, her trial testimony that Robinson covered her mouth and nose.
¶20 Next, the circuit court reminded Robinson that a person commits the crime of suffocation by intentionally impeding "normal breathing ... by blocking the nose or mouth of another person." See WIS. STAT . § 940.235 (2015-16);[2] WIS JI-CRIMINAL 1255. The circuit court then emphasized that F.P. consistently testified that Robinson covered her mouth and impeded her breathing, and the circuit court pointed out that this testimony supported a conviction under § 940.235 without further evidence that he also covered her nose. The circuit court went on to observe that Robinson, the only other witness to the alleged violence, denied any aggressive conduct, and the circuit court noted with evident skepticism that he further "testified that during the course of their relationship, he never once got mad and yelled at the victim or had an argument with her." Finally, the circuit court pointed out that Robinson admitted he had six prior convictions. See State v. Gary M.B. , 2004 WI 33, ¶21, 270 Wis. 2d 62, 676 N.W.2d 475 (explaining that prior convictions are relevant to an assessment of credibility "because Wisconsin law presumes that criminals as a class are less truthful than persons who have not been convicted of a crime").
¶21 After reviewing the evidence, the applicable statute, and Robinson's claim for postconviction relief, the circuit court concluded: "had trial counsel attempted to impeach the victim with her prior statements, it would not [have] affected the court's credibility determination or its verdict in this case." Robinson therefore fails to show any prejudice flowing from trial counsel's decision not to impeach F.P. with her prior statements. Cf. State v. Giebel , 198 Wis. 2d 207, 219, 541 N.W.2d 815 (Ct. App. 1995) (holding, in the context of a challenge to trial counsel's effectiveness at sentencing, that the defendant did not prove prejudice where the circuit court found it would have acted no differently had trial counsel performed as the defendant suggested).
¶22 In sum, Robinson failed to demonstrate in his postconviction motion that his trial counsel was ineffective. Accordingly, the circuit court properly exercised its discretion when it denied his postconviction motion without a hearing. See Allen , 274 Wis. 2d 568, ¶9. For all of the foregoing reasons, we affirm.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

We observe that during postconviction proceedings, Robinson showed that his trial counsel "prepared a list of proposed cross-examination questions prior to trial." Curiously, although Robinson denied at trial that he ever acted violently towards F.P., and although he alleged in postconviction proceedings that F.P. never claimed before trial that he covered her nose during a struggle, one of those prepared questions was: "And he put his hand over your mouth. Just your mouth. ( [Y]ou did not state over your nose to [ ] Dukat)."

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.