23CA0435 Peo v Anderson 12-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0435
Larimer County District Court No. 16CR380
Honorable Stephen J. Jouard, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Chayce Aaron Anderson,

Defendant-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE SULLIVAN
J. Jones and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Kimberly Alderman Penix, Alternate Defense Counsel, Chelsey Bradley,
Alternate Defense Counsel, Fort Collins, Colorado, for Defendant-Appellant

¶ 1     Defendant, Chayce Aaron Anderson, appeals the postconviction court's order denying his Crim. P. 35(c) motion without an evidentiary hearing.  We affirm.

## I.     Background

¶ 2     In October 2017, a jury found Anderson guilty of nine counts related to two construction site burglaries, including four counts of second degree burglary, two counts of criminal mischief, and one count each of theft, criminal attempt to commit theft, and criminal attempt to commit second degree burglary.  At trial, the jury heard evidence from which it could have reasonably found the following facts.

¶ 3     Anderson and an acquaintance, Jacob Ansari, stole equipment from two construction sites — the Cargill site and the Temple site.  On the night of the Temple site burglary, Anderson and Ansari had been drinking at several bars.  Between 1:00 a.m. and 2:00 a.m., an employee at the Temple site spotted two individuals banging on a trailer with a sledgehammer.  The employee yelled at the individuals, causing them to flee.  The employee then realized that the trailer had been broken into and contacted law enforcement.  The employee also noticed a pickup truck parked on the outskirts of

the construction site. After inspecting the truck and finding two masks and bolt cutters inside, responding officers had the truck towed to the police department for further investigation.

¶ 4     The next day, Anderson arrived at the police station to attempt to retrieve his truck. During a voluntary interview with a detective, which the detective recorded, Anderson claimed that he didn't know why his truck was at the police station and that he had been drinking heavily the night before.

¶ 5     Ansari later admitted to law enforcement that he and Anderson committed the burglaries at both construction sites. Cell phone location data obtained by law enforcement placed Ansari's and Anderson's phones at the Temple site on the night of the burglary.

¶ 6     Anderson appealed his convictions and a division of this court affirmed. *People v. Anderson*, (Colo. App. No. 18CA0334, June 11, 2020) (not published pursuant to C.A.R. 35(e)). Anderson then filed a pro se petition for postconviction relief under Crim. P. 35(c), asserting fifteen claims for relief, including a claim that his trial counsel provided ineffective assistance of counsel. The postconviction court appointed counsel, who supplemented

Anderson's pro se petition. The postconviction court subsequently denied all of Anderson's claims without a hearing.

¶ 7 Anderson now appeals. He contends that the postconviction court erred by denying his Crim. P. 35(c) motion without a hearing because his factual allegations, taken as true, showed that his trial counsel provided ineffective assistance of counsel by failing to (1) assert a voluntary intoxication defense and request a corresponding voluntary intoxication jury instruction; (2) move to suppress evidence obtained from his cell phone following a warrantless search; (3) cross-examine Ansari regarding the terms of his plea agreement; and (4) introduce the full recording of Anderson's voluntary police interview. Anderson also contends that his trial counsel's numerous errors, even if harmless in isolation, amounted to ineffective assistance of counsel when considered cumulatively. We disagree with these contentions and affirm.

## II. Standard of Review

¶ 8 We review de novo the postconviction court's denial of a defendant's Crim. P. 35(c) motion without a hearing. *People v. Trujillo*, 169 P.3d 235, 237 (Colo. App. 2007).

### III. Applicable Law

¶ 9 A court may deny a defendant's postconviction motion under Crim. P. 35(c) without an evidentiary hearing only where the motion, files, and record in the case clearly establish that the allegations presented in the motion are without merit and don't warrant postconviction relief. *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003). The court must determine whether the defendant's allegations, even if proven true, would fail to establish either of the two required prongs under the *Strickland* test for ineffective assistance of counsel. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶ 10 Under *Strickland*, a defendant must prove that (1) trial counsel's performance was deficient and (2) such deficient performance prejudiced the defense. 466 U.S. at 687. An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. To prove that an attorney's deficient performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. We "must indulge a strong

4

presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, while also evaluating counsel's performance from counsel's perspective at the time of the representation, *People v. Garcia*, 815 P.2d 937, 941 (Colo. 1991).

## IV. Analysis

### A. Voluntary Intoxication Defense

¶ 11 Anderson first contends that the postconviction court erred by denying his Crim. P. 35(c) motion without a hearing because he set forth facts showing that his trial counsel provided ineffective assistance of counsel by failing to (1) investigate and assert a voluntary intoxication defense and (2) request a corresponding voluntary intoxication jury instruction. He argues that, but for his trial counsel's failure to pursue this defense, the jury wouldn't have convicted him because a reasonable juror would have concluded that he couldn't have formed the requisite intent on the night of the Temple site burglary. The postconviction court found, in part, that trial counsel's decision to refrain from pursuing a voluntary intoxication defense "was a strategic decision," and thus didn't constitute deficient performance.

¶ 12    We agree with the postconviction court that trial counsel's decision to forgo a voluntary intoxication defense could have been based on sound trial strategy. Anderson's theory of defense at trial was a general denial. He argued that he never went to the Temple site on the night of the burglary. According to Anderson's theory of defense, because he was "extremely drunk" on the night of the burglary, he agreed to let two men "borrow his truck overnight" in exchange for giving him marijuana and a ride home. Anderson argued that the two men used his truck to commit the burglary after dropping him off at home.

¶ 13    In contrast to a general denial, a voluntary intoxication defense would have required Anderson's trial counsel to argue that, to the extent Anderson participated in criminal activity, he couldn't have formed the requisite specific intent, negating an essential element of the charged offense. *See Brown v. People*, 239 P.3d 764, 769 (Colo. 2010) (voluntary intoxication "is a partial defense that, under appropriate circumstances, negates the specific intent necessary to carry out certain offenses"). As a result, a voluntary intoxication defense would have conflicted with Anderson's theory that he was at home at the time of the burglary. While Anderson

conceivably could have advanced both alternative theories, doing so would have risked damaging the defense's credibility in the jurors' eyes. *See, e.g., People v. Garner*, 2015 COA 174, ¶¶ 66-67 (defense counsel's explanation that a voluntary intoxication instruction would have been inconsistent with the defense's chosen general denial theory, and would have undermined the defense's credibility with the jury, "was a reasonable explanation"); *see also Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998) ("[C]ounsel's failure to seek an intoxication instruction was reasonable, because the instruction would have conflicted with his chosen trial strategy."). Pursuing a voluntary intoxication defense also would have risked the jury "pictur[ing] [Anderson] at the scene," rather than at home. *People v. Villarreal*, 231 P.3d 29, 35 (Colo. App. 2009) (defense counsel didn't provide ineffective assistance of counsel by failing to request a voluntary intoxication instruction that would have "entice[d] the jury to . . . imagine the defendant in proximity to the victim"), *aff'd*, 2012 CO 64.

¶ 14 "[I]n applying the presumption that the challenged action might be considered sound strategy, courts are 'required not simply to give [the] attorneys the benefit of the doubt, but to affirmatively

entertain the range of possible reasons . . . counsel may have had for proceeding as they did.'" *Garner*, ¶ 70 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)). Given the recognized risks associated with pursuing a voluntary intoxication defense alongside a general denial defense, we can't conclude that Anderson alleged facts that would overcome the presumption that his trial counsel's conduct was grounded in sound trial strategy. *See People v. Houser*, 2020 COA 128, ¶ 36 ("*Strickland* cautioned that '[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" (quoting *Strickland*, 466 U.S. at 689)); *see also Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.").

B.     Failure to Move to Suppress Cell Phone Evidence

¶ 15     Anderson next contends that the postconviction court erred by denying his Crim. P. 35(c) motion without a hearing because he set

8

forth facts showing that his trial counsel provided ineffective assistance by failing to move to suppress evidence obtained from his cell phone that law enforcement seized upon his arrest.

¶ 16   At the outset, we reject the People's argument that Anderson's contention raises a new argument on appeal that he didn't present to the postconviction court.  Anderson argued in his postconviction motion that his trial counsel provided ineffective assistance by failing to move to suppress evidence that law enforcement obtained from his cell phone without a warrant, "resulting in the fruits of an illegal and unconstitutional search and seizure."  Thus, Anderson adequately drew the postconviction court's attention to the alleged ineffective assistance that he now asserts on appeal, allowing the court a meaningful chance to consider it.  *Rael v. People*, 2017 CO 67, ¶ 17 ("We do not require that parties use 'talismanic language' to preserve an argument for appeal." (quoting *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004))).

¶ 17   We nonetheless conclude that Anderson failed to allege facts that, when considered in light of the record, would establish prejudice under *Strickland*'s second prong.  *See Strickland*, 466 U.S. at 694; *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)

("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

¶ 18  According to Anderson, his trial counsel should have moved to suppress evidence obtained from his cell phone that law enforcement seized upon his arrest because an officer looked through it before obtaining a warrant.  At trial, the prosecution's evidence related to Anderson's cell phone fell into two categories: (1) evidence stemming from law enforcement's search of the cell phone's contents and (2) location information for the cell phone from AT&T, Anderson's service provider.

¶ 19  Regarding the first category, a detective testified at trial that Anderson's cell phone contained pictures and screenshots of internet searches of construction equipment similar to the items

taken from the Temple site.[1]  The detective also noticed that the phone's user made a variety of internet searches for "very specific tools."

¶ 20     The detective also testified at length, however, regarding the second category.  Specifically, the detective explained that he obtained a warrant for the production of Anderson's cell phone records from AT&T, including location data, and that the information received from AT&T was separate from the information extracted from Anderson's cell phone itself.  The records that AT&T provided to the detective included date, time, and location information for Anderson's cell phone on the night of the Temple site burglary.  (The detective also obtained similar information for Ansari's cell phone.)  The detective then input this information into a computer program that mapped the locations of Anderson's and

---

[1] Law enforcement collected a second cell phone, a "ZTE" phone, from Anderson's truck when it was towed.  An officer searched the ZTE phone's contents after obtaining a warrant.  Anderson doesn't argue that his trial counsel should have challenged that search. But as both parties point out, the detective's trial testimony is unclear which cell phone contained the arguably inculpatory pictures and internet searches.  For purposes of our analysis, we will assume, without deciding, that law enforcement found the pictures and internet searches on the cell phone that law enforcement seized from Anderson upon his arrest.

Ansari's phones over time. The detective testified that the map showed that both Anderson's and Ansari's phones accessed two cell phone towers just before and after the Temple site burglary. The Temple site fell "right in between those two towers." According to the detective, the phones went silent for about fifteen minutes but reactivated "just after" the construction site employee called 911 to report the burglary.

¶ 21 The map, which the prosecution admitted into evidence and published to the jury, largely corroborated the detective's testimony. It showed Anderson's and Ansari's phones within a mile of the Temple site starting at approximately 1:00 a.m. until the phones went silent at 1:34 a.m. The phones reactivated again in the same area at approximately 2:00 a.m. and then moved away from the Temple site starting at 2:37 a.m. The construction site employee called 911 to report the burglary at 1:46 a.m.

¶ 22 The map and the detective's testimony are also consistent with Ansari's testimony. Ansari testified that he and Anderson both had their phones with them when they burglarized the Temple site, but he believed that he "turned [his] phone off" at some point because he feared it would reveal his location. After the burglary, Ansari

12

turned his phone back on and used it to call a friend to pick them up at a nearby school.

¶ 23    Thus, even without the evidence obtained from the search of Anderson's cell phone, the jury still would have heard evidence that Anderson's and Ansari's phones were near the Temple site just before the employee's 911 call; Anderson and Ansari burglarized the Temple site; their phones weren't active during the burglary; and their phones reactivated shortly after the burglary and then moved away from the Temple site.  Given this evidence — which law enforcement obtained separately from their search of Anderson's cell phone — we can't say that Anderson alleged facts showing a reasonable probability that, but for counsel's failure to move to suppress the contents of his cell phone, the result of the trial would have been different.  *See Strickland*, 466 U.S. at 694; *see also Dunlap v. People*, 173 P.3d 1054, 1068-69 (Colo. 2007) (the defendant failed to establish *Strickland*'s prejudice prong where overwhelming evidence supported the jury's guilty verdict).

## C. Failure to Cross-Examine Ansari Regarding His Plea Agreement

¶ 24    Anderson also contends that the postconviction court erred by denying his Crim. P. 35(c) motion without a hearing because he set forth facts showing that his trial counsel provided ineffective assistance of counsel by failing to cross-examine Ansari regarding the terms of his plea agreement.[2]  The postconviction court rejected Anderson's argument, concluding that Anderson failed to allege sufficient facts showing that he suffered prejudice from his trial counsel's performance.

¶ 25    At trial, Ansari testified to the following:

- he was currently incarcerated at the Department of Corrections;

- among other convictions, he was convicted in 2016 of second degree burglary, a class 4 felony, for burglarizing the two construction sites;

- he and Anderson burglarized the sites together;

---

[2] Anderson concedes in his reply brief that his trial counsel didn't provide ineffective assistance of counsel by allegedly failing to impeach Ansari with the recording of Ansari's first police interview.

- he had never met the prosecutor in person before and had only spoken with her for five minutes, "if that," the previous week; and

- the prosecutor didn't offer him anything or make any promises to him in exchange for his testimony at Anderson's trial.

¶ 26    In denying Anderson's Crim. P. 35(c) motion, the postconviction court noted that "Ansari was sentenced before his trial testimony was given and there is no provision in his plea agreement that his plea was conditioned, in any way, on providing truthful testimony in [Anderson's] subsequent trial."

¶ 27    Based on Ansari's testimony, the jury heard most of the relevant terms of his plea agreement, including that he was convicted of burglarizing the two construction sites, the conviction was a class 4 felony, and the prosecutor didn't promise Ansari anything in exchange for his testimony at Anderson's trial.  In light of these details, we fail to see how defense counsel's further cross-examination of Ansari regarding the plea agreement would have so undermined Ansari's credibility that it would have created a reasonable probability of a different outcome.  *See Strickland*, 466

15

U.S. at 694; *see also People v. Washington,* 2014 COA 41, ¶ 35 (concluding defense counsel wasn't constitutionally ineffective for failing to present evidence that would have been cumulative).

¶ 28    Anderson nonetheless argues that his trial counsel should have elicited through cross-examination that Ansari received a light, four-year stipulated prison sentence as part of his plea agreement.  But Anderson cites no authority, and we've located none, indicating that defense counsel provides ineffective assistance of counsel by failing to cross-examine a fellow suspect who accepts a plea deal on the exact length of the fellow suspect's stipulated prison sentence.

¶ 29    Moreover, Ansari explained during the prosecutor's direct examination that he was currently incarcerated and that he had been previously convicted of several offenses, including but not limited to identity theft and false reporting.  Ansari's direct testimony therefore already provided grounds for the jury to question his credibility.  *Cf. State v. Tkacz,* 2002 WI App 281, ¶ 22, 654 N.W.2d 37, 45 (the defendant wasn't prejudiced by defense counsel's failure to impeach the prosecution's key witness with the exact number of her prior criminal convictions because the jury

already had reason to question the witness's credibility).

Anderson's trial counsel could have reasonably concluded that eliciting additional information about Ansari's plea agreement would have been "cumulative and unnecessary" to further undermine his credibility. *Id.* at ¶ 25 n.5, 654 N.W.2d at 45 n.5; *accord Washington*, ¶ 35. As a result, we can't conclude that a reasonable probability exists that the jury would have reached a different verdict had it been made aware of the precise length of Ansari's stipulated prison sentence. *See People v. Villanueva*, 2016 COA 70, ¶ 70 ("Villanueva has failed to establish a reasonable probability that the result of the trial would have been different had this evidence been introduced."); *People v. Tackett*, 742 P.2d 957, 960 (Colo. App. 1987) (counsel's failure to present "inconsequential" evidence didn't create a reasonable probability that the trial result would have been different).

### D. Failure to Introduce the Full Recording of Anderson's Voluntary Police Interview

Anderson next contends that the postconviction court erred by denying his Crim. P. 35(c) motion without a hearing because he set forth facts showing that his trial counsel provided ineffective

assistance of counsel by failing to introduce the full recording of his voluntary police interview. According to Anderson, the edited recording that the prosecutor played for jury omitted his statements that he was too intoxicated to "even walk straight," that he had no knowledge of the burglary, and that he lent his truck to two acquaintances in exchange for marijuana and a ride home.

¶ 31 The postconviction court determined that trial counsel's decisions regarding the edits to the recording were strategic and, in any event, Anderson failed to establish prejudice under *Strickland*'s second prong.

¶ 32 As a threshold matter, we note that Anderson's description of the edited recording doesn't align with the recording in the appellate record. Although certain parts of the recording appear to be omitted, the recording includes Anderson discussing his (1) heavy drinking and intoxication on the night of the Temple site burglary; (2) decision to loan his truck to two acquaintances in exchange for marijuana and a ride home; and (3) fierce denials of any involvement in the Temple site burglary. Because the jury heard these statements in the portion of the recording that the prosecutor

played at trial, we don't perceive how Anderson suffered prejudice from the edited recording. *See Strickland*, 466 U.S. at 687.

¶ 33    We also agree with the postconviction court that trial counsel's decisions regarding the recording edits could have been rooted in sound trial strategy. Anderson argued in his pro se petition for postconviction relief that his trial counsel permitted the prosecution to edit the recording to remove, among other things, his statements about his "distrust for detectives" and his juvenile record. Anderson's trial counsel could have reasonably decided that removing these irrelevant and potentially prejudicial statements from the jury's consideration best served Anderson's theory of defense. *See People v. Bradley*, 25 P.3d 1271, 1275 (Colo. App. 2001) ("Mere disagreement as to trial strategy will not support a claim for ineffective assistance of counsel."); *see also Strickland*, 466 U.S. at 689 (explaining that the defendant must overcome the presumption that "the challenged action might be considered sound trial strategy") (citation omitted).

¶ 34    Accordingly, the postconviction court didn't err by denying without a hearing Anderson's postconviction claim that his trial counsel provided ineffective assistance of counsel.

## V.    Cumulative Error

¶ 35    Anderson last contends that his trial counsel's numerous errors, even if harmless in isolation, amount to ineffective assistance of counsel when considered cumulatively.

¶ 36    Even if we assume that the cumulative error doctrine applies to ineffective assistance of counsel claims — an issue we don't decide — we have found no error in the postconviction court's order denying Anderson's claims.  A cumulative error analysis is therefore unnecessary.  *See People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009) (cumulative error analysis is required only when multiple errors have been identified).

## VI.    Abandoned Claims

¶ 37    On appeal, Anderson doesn't challenge the postconviction court's denial of the other ineffective assistance of counsel claims in his pro se Crim. P. 35(c) petition.  We therefore deem those claims abandoned.  *See People v. Brooks*, 250 P.3d 771, 772 (Colo. App. 2010) ("[A]ny arguments defendant made in his Crim. P. 35 motions that are not specifically reasserted on appeal are abandoned, and we therefore do not address them.").

## VII.   Disposition

¶ 38    We affirm the order.

JUDGE J. JONES and JUDGE LIPINSKY concur.